Steven Martell COLLINS,
Petitioner–Appellant,

v.

Bertram RICE; Attorney General
of the State of California,
Respondents–Appellees.

No. 01–56958.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2003.

Filed Nov. 7, 2003.

Amended April 8, 2004.

Karen H. Bucur, Laguna Hills, CA, argued the case for the appellant.

Erika D. Jackson, Deputy Attorney General, Los Angeles, CA, argued the case for the appellees.

Before HALL, THOMAS, and PAEZ, Circuit Judges.

### ORDER

The opinion filed November 7, 2003 is AMENDED as follows:

1. Page ——, line 14: delete "and 019" and change "Jurors" to "Juror."

2. Footnote 12, line 2: after "challenge" insert "because the prosecutor labeled Juror 019 'young' even

though Juror 019 was a grandmother."

3. Delete the first full paragraph on page ——.

4. Delete "her pretextual justifications for dismissing Juror 019," on line 2–3 of the last paragraph on page ——.

5. The first full sentence on page —— should be amended to read: "The record also shows that one of her justifications was patently discriminatory (gender), while one of her justifications for dismissing Juror 019 was contrary to the record (age)."

6. Footnote 15, lines 16–17: change "three reasons were not applied to comparably similar jurors who were not struck" to "one reason was not applied to a comparably similar juror who was not struck."

7. Delete the following from page 15922: ", while her justification based on Juror 019's daughter's past cocaine addiction was pretextual given that a white juror (Juror 030) with comparably similar characteristics was permitted to serve on the jury."

8. Page ——, line 19: change "Jurors" to "Juror" and delete "and 019".

With these amendments, the panel majority has voted to deny the petition for panel rehearing and petition for rehearing en banc. Judge Hall voted to grant the petition for panel rehearing, and recommended granting the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc reconsideration. FED. R. APP. P. 35.

The petition for rehearing en banc is denied.

BEA, Circuit Judge, with whom KLEINFELD, GOULD, TALLMAN, and CALLAHAN, Circuit Judges, join, dissenting from the denial of rehearing en banc:

I respectfully dissent from the court's denial of the state's petition for a rehearing en banc because the majority opinion seriously undermines the ability of a trial court to judge the sincerity of counsel's reason for a peremptory challenge to a juror when a *Batson/Wheeler*[1] challenge is made.

Collins is an African American who was convicted of possession of 0.1grams of rock cocaine. It was his third felony conviction; he was sentenced to 25 years to life under California's "three strikes" law. The sentence in this case is harsh; from it, the majority opinion makes bad law.

On the basis of the prosecutor's peremptory challenge of *one* African American prospective juror, the majority opinion reverses a denial of habeas corpus and orders a new trial.

The trial court enquired of and listened to the prosecutor's race-neutral reasons for using a peremptory strike against an African American prospective juror, weighed the evidence both for and against concluding that the strike was racially motivated, and decided the prosecutor was credible and that her reasons for making the strike were indeed race-neutral. The Court of Appeal affirmed.

---

**1.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

In reversing this determination on the habeas petition, the majority opinion demeans demeanor evidence and nitpicks the record to find that, as a matter of law, the trial judge cannot find the prosecutor credible if there is evidence in the record to support the opposite conclusion. Instead of reviewing the evidence for clear error the majority conducted a de novo review in this case.

The majority opinion completely disregards the evidence supporting the trial judge's decision that the prosecutor was being truthful when she said she struck Juror 016 on the following permissible grounds: Juror 016 was young; the prosecutor thought Juror 016 appeared too tolerant for this type of case; Juror 016 had exhibited disrespect for the court by turning away and rolling her eyes when requested to answer "Yes" or "No" rather than "Uh-huh"; and Juror 016 was single, with no ties to the community.

The majority says it finds compelling evidence sufficient to overcome the deference it says it accords trial court credibility findings in three particulars: the prosecutor said that Jurors 016 and 019 were both young, when in fact 019 was a grandmother;[2] the trial judge said he did not personally see Juror 016 roll her eyes in disrespect;[3] and the prosecutor said she was also challenging Juror 016 due to her gender, a ground which the trial judge immediately rejected as unconstitutional.

The prosecutor's statement that Juror 016 rolled her eyes is critical to this case. If someone rolls her eyes when another speaks to her, the eye-rolling implies disrespect and rejection. The panel opinion concluded, irrationally, that because the trial judge did not see the eye-rolling, the state appellate court was unreasonable in approving the prosecutor's strike. The reason this is irrational is that it does not matter whether the state trial judge noticed the eye-rolling, or even whether there actually was any eye-rolling. All that matters is whether the prosecutor intentionally lied about the eye-rolling to make an excuse for getting an African American woman off the jury. If the prosecutor was really striking Juror 016 because she thought the juror rolled her eyes and not because she was African American, she had a right to strike her, even if she was mistaken about whether the eye-rolling actually occurred. In this case, the trial judge thought the prosecutor was telling the truth, and the state appeals court saw no reason to doubt it.

The record is uncontradicted that while the prosecutor was stating her reasons for the exercise of this single challenge, she was at all times within the sight of the trial judge, who observed her demeanor and sincerity. Indeed, at the end of counsel's presentation on the issue, the judge commented he would give the "benefit of the doubt" to the prosecutor's reason for the challenge.

Without the benefit of the trial judge's observations and on a cold record containing ample evidence supporting the prosecutor's stated reasons for the strike, the majority concludes that the state court's findings amount to a misapplication of *Batson* and an objectively unreasonable deduction from the evidence presented.

---

**2.** This was an incorrect observation, but one not objected to or rebutted by defense counsel. From the colloquy it appears that everyone in that room knew the prosecutor meant to compare Juror 016 to Juror 006.

**3.** Defense counsel remained mute as to whether she had seen Juror 016 roll her eyes in disrespect. California law allows the trier of fact to consider the failure to deny or explain contrary evidence as probative of that evidence. *See* CAL. EVID. CODE § 413; Cal. BAJI 2.04.

That conclusion in effect eliminates the ability of the trial judge to make determinations of sincerity and credibility based on observation of counsel's demeanor in justifying a peremptory challenge. This is directly contrary to the teachings of the Supreme Court:

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within the trial judge's province."

*Hernandez v. New York*, 500 U.S. 352, 364–65, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (citations omitted).

Although acknowledging *Hernandez*, the majority opinion in effect eliminates the rule that requires us to defer to the trial judge on credibility findings in *Batson* challenges. Now, our panels can pick and choose among bits of circumstantial evidence, whether or not that evidence was challenged at trial or on appeal, to determine whether an attorney was telling the truth in her reasons for peremptory strikes, without regard to the attorney's demeanor.[4] *See* Judge Hall's dissent. 348 F.3d at 1100.

The value of the trial judge's observation of demeanor in determining credibility has long been a mainstay of our jurisprudence:

> There can be no doubt that seeing a witness testify live assists the finder of

fact in evaluating the witness's credibility. As the Supreme Court stated in *Anderson v. City of Bessemer*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518[] (1985):"[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* at 575, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518[.] Live testimony enables the finder of fact to see the witness's physical reactions to questions, to assess the witness's voice-matters that cannot be gleaned from a written transcript. Because the district judge is able to hear testimony live and to view the witnesses as they testify, his credibility findings are entitled to deference on appeal.

*United States v. Mejia*, 69 F.3d 309, 315 (9th Cir.1995).

The prosecutor represented that she saw Juror 016 roll her eyes in disrespect for the trial court, and the trial judge believed she was truthful. The majority opinion now requires the trial judge to detail why he thought the prosecutor *was* credible, or else this court will presume she was *not*. Why we should presume a prosecutor, who is an officer of the court, is not credible when the trial judge found that she was is beyond all logic. For a contrary result in a similar case, see *Williams v. Rhoades*, 354 F.3d 1101 (9th Cir.2004), which properly accorded deference to the trial judge's findings in a *Batson* challenge.

In addition, the panel's opinion, although citing 28 U.S.C. § 2254(d), departs from the spirit, if not the letter, of the statute in its application of the statute to the facts in

---

4. This directly conflicts with the California jury instruction that allows juries to consider "the demeanor and manner of the witness while testifying" in determining the believability of a witness. *See* Cal. BAJI 2.20. If juries are allowed to weigh a witness' credibility, there is no logical reason a trial judge cannot do the same.

this case. As noted, the panel substitutes its own inferences drawn from the cold record for the perspectives of the trial court and the state appellate court. The panel then insists that any perspective other than its own, must be unreasonable. In my opinion, this is not consistent with the statute's limitation of federal habeas relief to instances where the state court decision "was contrary to, or involved an unreasonable application of clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

En banc rehearing was necessary to avoid arguments between counsel battling over whether the standard in *Collins* or the standard in *Williams*[5] applies. Those battles will now rage with no end in sight. Accordingly, I respectfully dissent from the denial of rehearing en banc.

## OPINION

PAEZ, Circuit Judge:

Steven Collins appeals the district court's order denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. During jury selection prior to his state court trial for possession of a controlled substance, Collins, an African–American male, alleged that race motivated the prosecutor's peremptory strikes against two African–American women in the jury venire in violation of *People v. Wheeler*,[1] but the state trial court rejected Collins' *Wheeler* motion. The jury found him guilty of the

possession charge and also found that Collins had been convicted of robbery and forcible rape in 1982. Accordingly, with three felony convictions, the court sentenced him to a three strikes term of twenty-five years to life in state prison.[2] The California Court of Appeal affirmed his conviction and sentence, and the California Supreme Court denied both Collins' petition for review and his petition for a writ of habeas corpus.

We have jurisdiction pursuant to 28 U.S.C. § 2253, and we conclude that the California Court of Appeal's decision that the prosecutor did not engage in purposeful discrimination during jury selection represents (1) an unreasonable determination of the facts in light of the evidence presented at trial, and (2) an objectively unreasonable application of clearly established law. Accordingly, we reverse with instructions to grant the petition.

## BACKGROUND

After Collins was discovered in possession of 0.10 grams of powder cocaine in March 1996, the State of California charged him with possession of a controlled substance in violation of California Health and Safety Code section 11350(a). When jury selection began, the trial court excused ten of the original thirty-three members of the venire. Of the remaining twenty-three, three appeared to be African–American.[3]

---

**5.** *See Williams v. Rhoades,* 354 F.3d 1101 (9th Cir.2004) where three African Americans were struck, habeas relief denied, and that denial affirmed by this court.

**1.** 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

**2.** *See* Cal.Penal Code Ann. § 667(e)(2)(A) (West 1999).

**3.** At a later point in the proceeding, the prosecutor argued that there were in fact four African–American jurors in the venire. She identified one female juror as being "of African–American color, black color," but defense counsel clarified that although she was a "woman of color," this juror was not in fact African–American.

During voir dire, Juror 016, one of two African–American women in the venire, stated that she lived in Inglewood, California, was single, had no children, no prior jury experience, no prior employment experience in law enforcement, and worked as an automations clerk for the Federal Aviation Administration. She also stated that no one close to her had ever been accused of a drug-related offense, nor had anyone close to her had a problem with alcohol or drugs, and that she had no reason to believe that drug dealers operated in her neighborhood. When asked whether she thought that possession of rock cocaine ought to be against the law, she answered "yes." Juror 016 also told the court that there was nothing about the nature of the charge of possession of rock cocaine that might make it difficult for her to sit on a case involving drug charges. The prosecutor exercised a peremptory challenge to excuse Juror 016.

Juror 019, the other African–American woman in the venire, told the court that she lived in Inglewood, California, was single with seven grown children,[4] and was currently a retired nurse. She also stated that she had no relatives or close friends in law enforcement and had never had an experience with a police officer that was "particularly positive or particularly negative." At one time, her youngest daughter had a problem with drugs. Juror 019 had no idea what kind of drugs but thought that it might have been cocaine. Juror 019 stated that she "was involved in" her daughter's struggle with addiction and "had to help her," but that she did not think that anything about her relationship with her daughter or the daughter's cocaine problem would affect her ability to be fair and impartial in Collins' case.

After the prosecutor exercised another peremptory challenge to excuse Juror 019, defense counsel made a motion pursuant to *People v. Wheeler*, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748,[5] alleging that the prosecutor had improperly dismissed Jurors 016 and 019 on the basis of race. The trial court determined that Collins had established a prima facie case of racial discrimination and thus asked the prosecutor to justify her peremptory challenges. The prosecutor responded:

Ms. 016 as well as Ms. 019 were both young and I was concerned with them being too tolerant of this type of case. Also, Ms. 016 made a remark when the judge made a response to her comment "uh-huh," she turned away and rolled her eyes. I don't think you asked her specifically to give a yes or no, but she went "yes," and rolled her eyes and turned away from the court. She and Mr. 006 were both single, no ties.

[Defense Counsel]: Who is 006?

[Prosecutor]: He is the white juror. That was the reason, the justification, for excusing her, rather than her being

---

4. When asked to provide her children's occupations, Juror 019 stated that "[t]he oldest one is a computer manager for a company in Van Nuys. Another one is a clinical social worker, works for herself now. One son has his own mechanic shop; one does not work. The other one is in Arizona working for McDonnell Douglas. The youngest is at home with five kids."

5. *Wheeler* is the "California analogue" to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Lewis v. Lewis*, 321

F.3d 824, 827 n. 5 (9th Cir.2003). Although aspects of *Wheeler* differ from *Batson*, notably the requirements for establishing a prima facie case of discrimination, *see Cooperwood v. Cambra*, 245 F.3d 1042, 1046–47 (9th Cir. 2001), the state trial court's finding that Collins established a prima facie case is not in dispute. Because the relevant aspects of the two cases are the same, and because we are reviewing Collins' petition for a writ of habeas corpus under 28 U.S.C. § 2254, we refer to *Batson* in analyzing his claims.

an African–American. 019, she also had a daughter having a drug problem and she talked about not knowing much about what drug it was, things like that. She was not sufficiently educated in some areas to decide a case like this. But it is beyond any of her experience.

The judge, outside the presence of the prospective jurors, asked the prosecutor if she had any additional justifications to·offer for striking the two African–American female jurors. The following colloquy took place:

[Prosecutor]: I was the one to bring to the court's attention that the two African–American jurors that were excused were both female and the defendant is a male and there is a male African–American on the jury that has been on it since the beginning, I believe, of this case, of the jury panel that were seated. And there is a second female juror that is of African–American color, black color, on the jury, still seated. That is it, your honor, at this point. Does the court need cases for those types of reasons as being upheld in other courts, age and gender and inexperience with a certain subject area?

The Court: I'll let you know. [Defense counsel], would you like to be heard? [Defense counsel]: Yes. [Prosecutor] has talked about looking for more male/female balance. I thought the court was asking each of these potential jurors if they could be fair. And I don't think that should be decided upon their·gender. [Prosecutor] has compared Ms. 016 to Mr. 006, who she excused by saying they are both young and she didn't feel she was getting enough information. If she wanted more information, she could have asked the court to ask more questions of Ms. 019 . . . .

The Court: [Prosecutor], do you have any authority to cite to the court that

gender is not a suspect classification in the usage of peremptory challenges?

[Prosecutor]: I don't have exact citations here for the court, but *People v. Ortega*, which also talks about the jury being balanced between young and old and men and women.

. . .

The Court: I recall the United States Supreme Court saying the·use of peremptory challenges based on gender is improper. I don't see, [Prosecutor], that you are seeking to justify excusing people of one ethnicity based on their gender. I don't think that is going to cut it.

[Prosecutor]: I think I tied that into a lack of ties in the community with both of them; that that was one factor that I considered, that is, the manner in which I stated that they could—that their youth was important. ·It was not that I don't want any young people on the jury. There. are, I believe, other young people on the jury.

After considering these arguments, the court denied the *Wheeler* motion. With regard to Juror 019, the court stated that it was "satisfied that at least one race and gender neutral explanation was offered for the exercise·of that peremptory challenge, that being Ms.. 019's experiences with a family member who had a drug problem." As to Juror·016, the court stated that it, "frankly, did not observe the demeanor of Ms. 016 that was complained of by the district attorney. However, Ms. 016 was a youthful person, as was 006. And one or more other prospective jurors also. The court is prepared to give the district attorney the benefit of the doubt as to Ms. 016."

After sentencing, Collins appealed his conviction and properly exhausted his remedies in both the California Court of Appeal and the California Supreme Court.

Collins challenged the trial court's denial of his *Wheeler* motion only with respect to Juror 016. On November 19, 1998, Collins filed a petition for writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. Ultimately, the district court dismissed his petition. Noting that the trial court had not observed Juror 016's demeanor, the district court concluded that it had to respect the trial court's decision to give the prosecutor the benefit of the doubt because Collins had not rebutted this decision with "clear and convincing evidence." The district court subsequently granted Collins' request for a certificate of appealability as to "[w]hether the petitioner's rights were violated under *Batson v. Kentucky* ... where the prosecution exercised a peremptory challenge against an African–American juror ostensibly on the ground of the juror's age and demeanor."

## I.

Because the California Supreme Court denied Collins' petition for review without comment, our analysis begins with the decision of the California Court of Appeal, an unpublished disposition. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000). In affirming the trial court's ruling, the state appellate court adopted the reasons cited by the trial court; thus, our analysis "will necessarily include discussion of the trial court's decision as well." *Lewis*, 321 F.3d at 829.

The California Court of Appeal determined that "because the trial court did not observe the prospective juror's demeanor, the trial court permitted the prosecutor to exclude prospective [J]uror [N]o. 016 based solely on her age." Citing both *Wheeler* and *Batson*, the state appellate court further rejected Collins' contention that age was an improper basis upon which to justify a peremptory challenge, noting that age groups are not a cognizable class and that peremptory challenges to "youthful and/or immature prospective jurors repeatedly have been upheld as proper." Even assuming that the prosecutor's reliance on Juror 016's young age was improper, the appellate court alternatively concluded that the trial court had engaged in a sincere and reasoned attempt to evaluate the prosecutor's justification, as "[j]urors may be excused on 'hunches' and even 'arbitrary' exclusion is permissible, so long as the reasons are not based on impermissible group bias." Noting that "nothing in the present record, including the trial court's decision to give the prosecutor the benefit of the doubt as to prospective [J]uror [N]o. 016's demeanor, indicates that the trial court did not approach its task appropriately," the appellate court determined that the trial court's decision was entitled to deference.

We review Collins' petition according to the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), as Collins filed his petition after April 24, 1996. We may only reverse a judgment of the state that was adjudicated on the merits if the state's decision was based on an objectively unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(2); *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003), or if the state court's decision was "contrary to, or involve[s] an unreasonable application of, clearly established Federal law" as determined by "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision," *Andrade*, 123 S.Ct.

at 1172 (citations omitted). We further note that the ultimate determination of whether the prosecutor evidenced an intent to discriminate in dismissing Juror 016 is a question of fact, *see Hernandez v. New York,* 500 U.S. 352, 367, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), and that under section 2254, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Collins therefore must prove that the state court's decision was " 'objectively unreasonable' in light of the record before the court." *Miller–El,* 537 U.S. 322, 123 S.Ct. at 1045, 154 L.Ed.2d 931.

## II.

■■■ The Equal Protection Clause forbids prosecutors from exercising peremptory challenges on the basis of race. *Batson,* 476 U.S. at 89, 106 S.Ct. 1712. Where a defendant asserts that a prosecutor's peremptory challenges were racially-motivated, a court must apply a three-step process for evaluating a *Batson* claim. *Hernandez,* 500 U.S. at 358–60, 111 S.Ct. 1859. First, the defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. *Id.*[6] Once a prima facie case is established, the burden shifts to the state to articulate a race-neutral explanation for the challenge. If the first two steps are satisfied, the court must then determine whether the defendant has carried his ultimate burden of proving purposeful discrimination.

### A.

■■■ Because the trial court determined that Collins had established a prima facie case, the prosecutor was required to articulate a race-neutral explanation—an explanation "based on something other than the race of the juror." *Hernandez,* 500 U.S. at 360, 111 S.Ct. 1859; *see also Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). In assessing the race-neutrality of the prosecutor's explanation, we "must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez,* 500 U.S. at 359, 111 S.Ct. 1859. At this step, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Stubbs v. Gomez,* 189 F.3d 1099, 1105 (9th Cir.1999) (internal quotation marks omitted). Although the prosecutor must give a " 'clear and reasonably specific' explanation of his 'legitimate' reasons" and "the reason must be 'related to the particular case to be tried,' " *Purkett,* 514 U.S. at 768–69, 115 S.Ct. 1769 (quoting *Batson,* 476 U.S. at 98 & n. 20, 106 S.Ct. 1712),"it is not until the *third* step that the persuasiveness of the justifications becomes relevant." *Id.* at 768, 115 S.Ct. 1769. For purposes of step 2, the prosecutor's explanation need not be "persuasive, or even plausible." *Id.*

The prosecutor offered five reasons for excluding Juror 016:(1) her youth and the possibility that she might be "too tolerant for this type of case," (2) her demeanor, (3) her marital status—"single" with "no ties," (4) her lack of ties to the community, and

---

6. We need not address the preliminary issue of whether Collins made a prima facie showing because the trial court ruled on the ultimate question of intentional discrimination under steps two and three of the *Batson* analysis. *Hernandez,* 500 U.S. at 359, 111 S.Ct. 1859; *United States v. Gillam,* 167 F.3d 1273, 1278 (9th Cir.1999).

(5) her gender.[7] The trial court rejected the prosecutor's attempt to justify her strike on the basis of Juror 016's gender, but appeared to credit the prosecutor's discussion of Juror 016's youthful age and her alleged demeanor as race-neutral justifications. The California Court of Appeal concluded that the trial court properly accepted the prosecutor's youthful age and demeanor justifications as race-neutral.

Although Collins concedes that the prosecutor's explanations for striking Juror 016 "may appear to be race-neutral on their face," citing *United States v. Bishop*, 959 F.2d 820, 825 (9th Cir.1992), he contends that rolling of the eyes, lack of ties in the community, and youthful age are not characteristics that would affect a juror's approach to a specific trial and therefore the prosecutor's explanations were "transparent proxies for racism." However, as Collins acknowledges, "[a]t this step of the inquiry, the issue is the *facial validity* of the prosecutor's explanation," *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859 (emphasis added), and, unlike the justifications offered in *Bishop*, 959 F.2d at 825, youthful age and the demeanor in question are not characteristics peculiar to a given race or "group-based presuppositions applicable in all criminal trials" to African–American jurors. *Id.*

▮ Further, neither the Supreme Court nor any circuit has held that the Equal Protection Clause prohibits a prosecutor from striking potential jurors on account of age. *United States v. Pichay*, 986 F.2d 1259, 1260 (9th Cir.1993); *United States v. Jackson*, 983 F.2d 757, 762 (7th Cir.1993). Thus, the California Court of Appeal's determination that age was a race-neutral justification for excusing Juror 016 is not contrary to, or an unreasonable application of, clearly established law. Alternatively, if the prosecutor had excluded Juror 016 because of her demeanor, this justification would not constitute a denial of equal protection, as discriminatory intent is not inherent in the prosecutor's explanation. *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859. Because we find no error in the California Court of Appeal's analysis at step 2, we proceed to step 3.

**B.**

▮ In the third step of a *Batson* challenge, the trial court has "the duty to determine whether the defendant has established purposeful discrimination," *Batson*, 476 U.S. at 98, 106 S.Ct. 1712, and therefore must evaluate the "persuasiveness" of the prosecutor's proffered reasons, *see Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. In determining whether the defendant has carried this burden, the Supreme Court provides that "a court must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Batson*, 476 U.S. at 93, 106 S.Ct. 1712 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)); *see also Hernandez*, 500 U.S. at 363, 111 S.Ct. 1859. "[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *see also Lewis*, 321 F.3d at 830 ("[I]f a review of the record undermines the prosecutor's stated reasons, or many of the proffered reasons, the reasons may be deemed a pretext for racial discrimination.")

▮ In the end, a finding of discriminatory intent turns largely on the trial

---

7. As evidence that she did not dismiss Jurors 016 and 019 because of their race, the prosecutor also noted that an African–American man and "a female juror that is of African–American color, black color" remained on the panel.

court's evaluation of the prosecutor's credibility, *see Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712, because"[t]he credibility of the prosecutor's explanation goes to the heart of the equal protection analysis," *Hernandez,* 500 U.S. at 367, 111 S.Ct. 1859. Indeed, "[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Id.* at 365, 111 S.Ct. 1859. "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller–El,* 537 U.S. 322, 123 S.Ct. at 1040, 154 L.Ed.2d 931. Although we afford great deference to the trial court's observations of the prosecutor's demeanor and intent, "[d]eference does not by definition preclude relief." *Id.* at 1041; *see also Lewis,* 321 F.3d at 831 ("The proffer of various faulty reasons and only one or two otherwise adequate reasons, may undermine the prosecutor's credibility to such an extent that a court should sustain a *Batson* challenge."); *United States v. Chinchilla,* 874 F.2d 695, 698–99 (9th Cir.1989) (holding that although reasons given by a prosecutor "would normally be adequately 'neutral' explanations taken at face value, the fact that two of the four proffered reasons do not hold up under judicial scrutiny militates against their sufficiency"); *Johnson v. Vasquez,* 3 F.3d 1327, 1331 (9th Cir. 1993) (noting that courts are not required to accept neutral reasons that are either unsupported by the record or are refuted by it).

In assessing the prosecutor's proffered justifications for excluding Juror 016, the state trial and appellate courts made unreasonable factual determinations in light of the evidence presented in the state court proceeding and unreasonably applied clearly established federal law as determined by the Supreme Court. With a careful eye towards "such circumstantial and direct evidence of intent as [was] available" to the appellate court, *Batson,* 476 U.S. at 93, 106 S.Ct. 1712 (internal quotation marks omitted), we address each of the justifications relied upon by the California courts.

### 1. Age

The state court of appeal determined that the prosecutor had dismissed Juror 016 solely on the basis of her age. The court explained that because youth was not a cognizable class for purposes of the cross-section rule and because youth had been recognized as a permissible justification for dismissal in the past, Collins had failed to demonstrate purposeful discrimination. However, the appellate court's conclusion is troubling in several respects.

First, although age has been upheld as a proper basis for excusing a potential juror, *see Pichay,* 986 F.2d at 1259, here, the prosecution explained that Juror 016's youthful age might make her "too tolerant for this type of case." Thus, the prosecutor attempted to equate her youthful age with a possible bias favoring criminal defendants facing drug charges. The prosecutor also later explained that Juror 016's youthful age was "important" because of her "lack of ties in the community," stating, "I think I tied that into a lack of ties in the community with both [Juror 016 and 019]; that was one factor that I considered, that is, the manner in which I stated that they could—that their youth was important."

According to the Supreme Court, Juror 016's age must be "related to the particular case to be tried," *Batson,* 476 U.S. at 98, 106 S.Ct. 1712, and must have some relevance to Juror 016's "possible ap-

proach to a specific trial," *Bishop*, 959 F.2d at 825. Indeed, although the prosecutor claimed that Juror 016's youthful age was of concern, she later explained that it was *not* the general presence of young jurors on the jury that concerned her. Rather, in referring to Jurors 016 and 019, the prosecutor stated "[i]t was not that I don't want any young people on the jury. There are, I believe, other young people on the jury." Thus, in explaining that she was not trying to exclude all young jurors from the jury, the prosecutor clarified that her reason for excluding Juror 016 was not her youthful age at all. Instead, her reason for excluding Juror 016 related to particular characteristics that the prosecutor associated with her youth—namely, the prosecutor's beliefs that Juror 016 might be sympathetic to an individual charged with drug possession and that she lacked ties to the community.[8]

■ The state court of appeal, however, glossed over the prosecutor's clarification and found that the sole basis upon which the trial court had permitted the prosecutor to exclude Juror 016 was her age. It concluded that because the exclusion of jurors on the basis of their age did not violate the Fourteenth Amendment, Collins had failed to meet his burden of proving purposeful discrimination. How-ever, the state appellate court's characterization of the prosecutor's reason for striking Juror 016 was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Indeed, the evidence in the trial record is clear and convincing that the prosecutor's proffered justifications for striking Juror 016 on the basis of her youthful age—possible tolerance of drug use and lack of ties to the community—were pretexts for purposeful discrimination.

With regard to Juror 016's possible tolerance,[9] during voir dire, Juror 016 answered "yes" to the court's question regarding whether she believed that possession of cocaine should be against the law, and she also told the court that there was nothing about the nature of the charge of possession of rock cocaine that might make it difficult for her to sit on Collins' case. There is no other evidence in the record that remotely suggests that Juror 016 was otherwise sympathetic to or tolerant of individuals involved with drug use or possession. Juror 016 told the court that neither she nor her family members or any of her close friends had ever had a problem with drugs or alcohol; nor had they

8. The fact that the trial court acknowledged that Juror 016 "was a youthful person, as was 006[, a]nd one or more other prospective jurors also," is of no moment. Although the trial court seemed to credit the prosecutor's proffered youthful age justification by a cross-racial comparison of youthful jurors who were excused (the record implies that Juror 006 was not a member of a racial minority), the court ignored the prosecutor's clarification that she did not strike Juror 016 because of her "youth," but rather because Juror 016 may have been "too tolerant for this type of case."

We further note that the record contains no information regarding Juror 016's age, save the trial court judge's statement that Juror 016 "was a youthful person, as was 006." Although the trial court is certainly in the best position to view demeanor, credibility, and other intangibles in the courtroom, age is an objective fact that is not so easily discerned by appearance. Thus, the record fails to establish just how old Juror 016 might have been.

9. Although the fact that Juror 016's purported tolerance "corresponds to a valid for-cause challenge [helped] demonstrate its race-neutral character" at step 2, *Hernandez*, 500 U.S. at 363, 111 S.Ct. 1859, the fact that nothing in the record supports the prosecutor's claim erodes the credibility of her explanation at step 3.

ever been accused of committing a crime involving illegal drugs. No other information regarding drug use, drug laws, or criminal enforcement of drug laws was solicited by the court or counsel, and Juror 016 never gave the court any information regarding her age. The prosecutor's clarification that Juror 016 might be "too tolerant for this type of case" as a basis for striking Juror 016 is therefore contrary to the evidence in the record. *See Purkett*, 514 U.S. at 768, 115 S.Ct. 1769 ("[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination."); *McClain v. Prunty*, 217 F.3d 1209, 1221 (9th Cir.2000) (rejecting prosecutor's attempt to attribute to challenged juror "beliefs that she did not hold" about "mistrust[ing] the system," where juror never made such a statement and indicated to the court that she did believe her son had been treated fairly by "the system").

The prosecutor later attempted to explain that Juror 016 was "single, no ties,"

presumably indicating that she was not married and possibly had no children. However, as we have already explained, *Batson* is clear that the prosecutor's proffered justifications must be reasonably "related to the particular case to be tried." 476 U.S. at 98, 106 S.Ct. 1712; *see also Bishop*, 959 F.2d at 825 (stating that a prosecutor's reason for dismissing a potential juror must have some nexus to her "possible approach to a specific trial"). The trial court record fails to establish how Juror 016's marital or parental status would have had any bearing on her ability to serve as a juror in a case involving prosecution for crack cocaine possession, and the prosecutor failed to offer any such explanation. Further, the record shows that the prosecutor did not strike Juror 015, a white juror who possessed the same objective characteristics as Juror 016: both were single, employed females with no children who responded to the court's questions in the same manner, thereby revealing the pretextual nature of this justification.[10] *See United States v. Alanis*, 335 F.3d 965, 969 (9th Cir.2003)

---

10. The prosecutor attempted to prove the race-neutral character of this justification by comparing Juror 016 with Juror 006, a white male, noting "[s]he and Mr. 006 were both single, no ties." *See Turner v. Marshall*, 121 F.3d 1248, 1251–52 (9th Cir.1997) ("A comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination."). The record reveals, however, that Jurors 016 and 006 had very different backgrounds and thus did not possess "comparable characteristics" for purposes of the cross-racial analysis discussed in *Turner*. Juror 006, like Juror 016 was single, but, in contrast to Juror 016, Juror 006 had never been employed and, significantly, had an uncle who was a recovered alcoholic. This evidence is inconsistent with the prosecutor's assertion that there was a white juror with comparable characteristics who was dismissed for being single with no children. *Compare Burks v. Borg*, 27 F.3d 1424, 1429

(9th Cir.1994) (holding that counsel may treat minority and nonminority jurors differently when there are subjective differences between them, although that party cannot insulate an explanation from appellate review simply by couching it in "vague and subjective terms") *with Turner*, 121 F.3d at 1251–52 (perceiving no basis to distinguish a challenged and unchallenged juror and holding that their similarity provided evidence of pretext); *cf. United States v. Lewis*, 837 F.2d 415, 417 & n. 5 (9th Cir.1988) (concluding that there was no evidence of pretext when the decision to strike the juror turned on "the interplay of various factors" identified by the prosecutor and "no unchallenged juror possessed all the cited characteristics").

We further note that, contrary to the suggestion made by the dissent, because Jurors 006 and 016 did not possess comparable characteristics, the comparison between the two did not provide a potential reason for the trial court to conclude that the prosecutor was credible.

("Peremptory challenges cannot be lawfully exercised against potential jurors of one gender unless potential jurors of another gender with comparable characteristics are also challenged."); *Lewis,* 321 F.3d at 832–33 ("[A] comparative analysis of D.F. with empaneled jurors reveals that a finding of pretext was warranted."); *McClain,* 217 F.3d at 1221–22 (holding that where a non-black juror with no prior jury experience was empaneled, the proffered reason for striking a black juror for lack of jury experience was not genuine and therefore was pretextual); *cf. Miller-El,* 537 U.S. 322, 123 S.Ct. at 1043, 154 L.Ed.2d 931 (noting the fact that "three of the State's proffered race-neutral rationales for striking African–American jurors pertained just as well to some white jurors who were not challenged" showed that the strikes "might have been selective and based on racial considerations").

The prosecutor also claimed that Juror 016's youth was "important" because of her "lack of ties in the community," stating, "I think I tied that into a lack of ties in the community with both [Juror 016 and Juror 019]; that was one factor that I considered, that is, the manner in which I stated that they could—that their youth was important." Not only is the prosecutor's statement that Juror 016 had a "lack of ties in the community" not sufficiently "clear and reasonably specific," *Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. 1712, but it is also not supported by the record and does not appear to have any relation to Juror 016's ability to serve as a juror in a criminal trial involving possession of crack cocaine. *See id.* at 88, 106 S.Ct. 1712 (holding that the prosecutor's exercise of peremptory challenges must be "related to his view concerning the outcome") (internal quotation marks omitted); *McClain,* 217 F.3d at 1223 (stating that where the prosecutor did not explain the significance of a juror's body language, the prosecu-

tor's claim that he struck that juror "on the sole basis that she had her elbow on the chair is patently frivolous," especially where no other evidence in the record indicated any possible bias).

In sum, there was clear and convincing evidence that the prosecutor's stated concern over Juror 016's youthful age was a pretext for discrimination, evidence that the state appellate court did not address in unreasonably concluding that the prosecutor had dismissed Juror 016 on the basis of her age. This evidence supports Collins' claim that the prosecutor struck Juror 016 because of her race, and also demonstrates that the state appellate court was unreasonable when it determined that the trial court did not err by determining that Collins had failed to prove purposeful discrimination. However, because the appellate court offered Juror 016's demeanor as an alternative explanation, we must assess whether the court unreasonably determined that the trial court had properly accepted that justification as nondiscriminatory before determining the ultimate significance of the appellate court's conclusion regarding Juror 016's age.

### 2. Demeanor

The state court of appeal also concluded that even if the prosecutor's reliance on Juror 016's youthful age had been improper, the "prosecutor reasonably could have interpreted prospective [Juror 016's] body language as indicative of hostility or disrespect" and properly dismissed her on that basis. Although the trial court did not witness Juror 016's alleged offensive conduct, the appellate court determined there was "*nothing* in the present record" indicating that the trial court should not have given the prosecutor the benefit of the doubt or that it had failed to evaluate whether the prosecutors' justifications should have been accepted.

■ As the record reflects, the state appellate court reasonably determined that the trial court had not observed Juror 016's demeanor but nonetheless accepted this alternate reason for striking Juror 016 on the basis of the prosecutor's credibility. Because the trial court did not observe Juror 016's demeanor, the critical question here is whether the appellate court's determination that the trial court properly credited the prosecutor's representation was unreasonable.[11] Notably, the basis for the state appellate court's determination was its conclusion that there was "nothing in the present record" to indicate that the trial court did not conduct a searching inquiry in giving the prosecutor the benefit of the doubt or should have questioned the prosecutor's credibility. We conclude that this determination was an unreasonable determination of the facts because the prosecutor failed to offer any credible justification for striking Juror 016.

First, we note that the prosecutor consistently identified Jurors 016 and 019 as "both young."[12] However, the record reveals that Juror 019 was at least a middle-aged grandmother. Indeed, Juror 019 informed the court that she was a retired nurse with seven grown children, the youngest of which had five children of her own. A prosecutor supplied with this information could not credibly identify Juror 019 as young. This incorrect factual statement supports Collins' argument that the prosecutor was not credible. *See McClain,* 217 F.3d at 1222 (holding that reasons for excusing black jurors that were objectively contradicted by the record provided evidence of purposeful discrimination); *Caldwell v. Maloney,* 159 F.3d 639, 651 (1st Cir.1998) (holding that serious questions of pretext arise when the facts in the record are "objectively contrary to" the prosecutor's proffered justifications).

11. In response to the prosecutor's characterization of Juror 016's alleged conduct, the trial court responded: "the court, frankly, did not observe the demeanor of Ms. 016 that was complained of by the district attorney." In light of the trial court's statement and the fact that there is nothing in the trial transcript (except the prosecutor's representation) which indicates that Juror 016 answered any question by stating "uh-huh" or that she had rolled her eyes or turned away, the appellate court reasonably determined that the trial court had accepted the prosecutor's statements about Juror 016's demeanor as true. Its corresponding conclusion—that a peremptory challenge exercised on the basis of a juror's body language would not be improper—was also reasonable. *See Burks,* 27 F.3d at 1429 & n. 3 (noting that trial counsel's evaluation of a potential juror's demeanor, tone, and facial expressions may lead to a "hunch" or "suspicion" that the juror might be biased, and that a peremptory challenge based on this reason would be legitimate); *United States v. Power,* 881 F.2d 733, 740 (9th Cir.1989) (accepting as legitimate the government's explanation that a juror's "fidgeting and looking around as he sat in the jury box

... made the prosecutor believe that the individual would not be an attentive juror").

12. Although Collins does not challenge the prosecutor's strike against Juror 019, this strike is relevant to Collins' *Batson* challenge because the prosecutor labeled Juror 019 "young" even though Juror 019 was a grandmother. *See Hernandez,* 500 U.S. at 363, 111 S.Ct. 1859 (holding that a prosecutor's motive "may often be inferred from the totality of relevant facts") (internal quotation marks omitted); *Purkett,* 514 U.S. at 768–69, 115 S.Ct. 1769 (holding that at step three, the trial court must evaluate the persuasiveness of the prosecutor's justification); *Batson,* 476 U.S. at 98, 106 S.Ct. 1712 (holding that the trial court must decide whether the prosecutor's explanation for the strike is pretextual); *United States v. Hill,* 146 F.3d 337, 342 (6th Cir. 1998) (noting that the trial court "has the responsibility to assess the prosecutor's credibility under all of the pertinent circumstances, and then to weigh the asserted justification against the strength of the defendant's prima facie case under the totality of the circumstances").

684

In addition, the trial court judge rejected the prosecutor's justification for striking Jurors 016 and 019 on the basis of gender. This too supports the argument that the prosecutor dismissed Juror 016 on the basis of her race.[13] *See Lewis,* 321 F.3d at 834 (stating that the fact that the trial court had found some of the prosecutor's arguments unconvincing "does not support the prosecutor's credibility; it undermines it"). Further, the fact that the prosecutor attempted to offer a facially discriminatory justification for dismissing the only black female jurors in the venire, and then quickly abandoned this justification when informed by the trial judge that it was improper, is another indication that the prosecutor's stated justifications were a pretext for discrimination. *Miller–El,* 537 U.S. 322, 123 S.Ct. at 1040, 154 L.Ed.2d 931 ("Credibility can be measured by, among other factors, the prosecutor's demeanor, by how reasonable, or how improbable, the explanations are.").

The prosecutor's objectively unreasonable statements regarding Juror 019's age, and her attempt to use gender as a race-neutral basis for excluding Jurors 016 and 019, combined with her pretextual justifications for dismissing Juror 016 on the basis of her alleged lack of community ties, her marital status, and her purported tolerance, and the fact that nothing in the record corroborated her allegations regarding Juror 016's demeanor, provide "clear and convincing evidence" that the prosecutor did not dismiss Juror 016 on the basis of her demeanor. In light of the evidence in the record, the appellate court's determination that the prosecutor dismissed Juror 016 because of her demeanor was an unreasonable determination of the facts. Because this determina-

tion provided the basis for the appellate court's conclusion that the trial court had not clearly erred in accepting the prosecutor's justification as race-neutral, this determination also was objectively unreasonable. *See Johnson,* 3 F.3d at 1331 ("When there is reason to believe that there is a racial motivation for the challenge," we are not "bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it."); *Lewis,* 321 F.3d at 833–34 (holding that where justification for strike was not corroborated by the record and the prosecutor was not credible, the proffered justification could not support state court's conclusion that petitioner had failed to prove purposeful discrimination).

### C.

The state court of appeal held that Collins had failed to establish purposeful discrimination on the basis of its objectively unreasonable determination that the prosecutor properly dismissed Juror 016 because of her age. The appellate court's alternative ruling—that the trial court properly credited the prosecutor's assertion that Juror 016 had rolled her eyes and turned away from the court when asked a question during voir dire, and that her dismissal based on Juror 016's demeanor did not provide any evidence of purposeful discrimination—is also unsupported by the record. Thus, clear and convincing evidence demonstrates that there was no credible basis for dismissing Juror 016 on the basis of her age or demeanor.

■ There is, however, substantial evidence supporting Collins' contention that the prosecutor dismissed Juror 016 be-

13. In rejecting the prosecutor's initial references to gender, the trial court explained: "I recall the United States Supreme Court saying the use of peremptory challenges based on gender is improper. I don't see ... that you are seeking to justify excusing people of one ethnicity based on their gender. I don't think that is going to cut it."

cause of her race—evidence that the appellate court failed to address. The trial record demonstrates that the prosecutor's justifications for dismissing Juror 016 on the basis of her age were contrary to the record (likely tolerance of drug offenders), were unrelated to her ability to serve as a juror in Collins' case (lack of community ties), and were not applied equally to white jurors (single with no children). The record also shows that one of her justifications was patently discriminatory (gender), while one of her justifications for dismissing Juror 019 was contrary to the record (age). In sum, the record demonstrates that the prosecutor's proffered reasons for dismissing Juror 016 were wholly implausible, unpersuasive, and a pretext for discrimination on the basis of her race.[14]

In order to secure habeas relief, however, Collins "must demonstrate that [the] state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court." *Miller–El,* 537 U.S. 322, 123 S.Ct. at 1045, 154 L.Ed.2d 931. We conclude that Collins has met this heavy burden.

### 1.

▆▆▆ The facts underlying the appellate court's conclusion, namely that the trial

court properly accepted the prosecutor's justifications that Juror 016 was young and had exhibited an improper demeanor, are unsupported by the record. Collins' claim of pretext, however, is supported by the record—the record contains clear and convincing evidence that the prosecutor's reasons for striking Jurors 016 and 019 were pretextual. Thus, not only were the state appellate court's factual determinations not supported by the record, but the record also demonstrates that the appellate court's ultimate conclusion that the trial court did not err in finding that Collins failed to establish purposeful discrimination was objectively unreasonable. The fact that the appellate court failed to address all the evidence relating to the prosecutor's justification for striking Juror 016 and indeed disregarded this evidence by stating that "nothing in the present record ... indicates the trial court did not approach its task appropriately" highlights the objective unreasonableness of its assessment of the record. Collins has thus shown by "clear and convincing evidence" that the state appellate court's determination, that the prosecutor did not purposefully discriminate on the basis of race in striking Juror 016, "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).[15]

---

14. The fact that a black man and "a female juror that [was] of African–American color, black color" remained in the venire does not alter our conclusion. *See Turner,* 121 F.3d at 1254 ("[A]lthough the fact that the prosecutor accepted four African–Americans on the jury may be considered indicative of a nondiscriminatory motive, [] it is not dispositive."); *Palmer v. Estelle,* 985 F.2d 456, 458 (9th Cir. 1993) ("[A] trial court may consider, but may not rely solely on, the existence of Blacks on a jury when determining whether a prosecutor has violated *Batson.*").

15. Contrary to the assertion in the dissent, we have not substituted our own judgment for that of the state court. "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court *can disagree* with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Miller–El,* 123 S.Ct. at 1041; *see also Hall v. Dir. of Corrs,* 343 F.3d 976, 984 n. 8 (9th

## 2.

Further, although the appellate court identified the three-step inquiry for identifying purposeful discrimination under *Batson*, it unreasonably applied *Batson's* third prong in determining that the trial court had fulfilled its *duty* to determine whether Collins had established purposeful discrimination. *See Andrade*, 123 S.Ct. at 1174 (citing *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). It is well-established that "once the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, the trial court then has the *duty* to determine if the defendant has established purposeful discrimination." *Hernandez*, 500 U.S. at 363, 111 S.Ct. 1859 (emphasis added) (internal quotation marks omitted); *id.* at 359, 111 S.Ct. 1859 (holding that the "trial court *must* determine whether the defendant has carried his burden of proving purposeful discrimination") (emphasis added); *Batson*, 476 U.S. at 98, 106 S.Ct. 1712 ("The trial court will then have the *duty* to determine if the defendant has established purposeful discrimination.") (emphasis added). As the Supreme Court has emphasized, "[i]n deciding if the defendant has carried his burden of persuasion, a court must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,' " *Batson*, 476 U.S. at 93, 106 S.Ct. 1712 (quoting *Arlington Heights*, 429 U.S. at 266, 97 S.Ct. 555), and must evaluate the "genuineness of the [prosecutor's] motive," *Purkett*, 514 U.S. at 769, 115 S.Ct. 1769. Thus, a state appellate court's decision

that overlooked a trial court's failure to evaluate the persuasiveness of the prosecutor's justifications in conducting this inquiry would rest on an unreasonable application of well-established Supreme Court precedent. *See Lewis*, 321 F.3d at 832 ("Unlike the trial court, a court of appeal is not in an ideal position to conduct a step three evaluation. It can, however, use the trial court's findings and the evidence on the record to evaluate the support on the record for the prosecutor's reasons and credibility, and to compare the struck and empaneled jurors.")

Here, the appellate court's determination that "nothing in the present record" indicated that the trial court failed to evaluate the prosecutor's credibility must have been based either (1) upon a conclusion that there was no evidence that undermined her credibility or (2) upon a belief that the record demonstrated that the trial court had assessed any such evidence in evaluating the persuasiveness of the prosecutor's justification. The record belies either conclusion.

As we have discussed, the prosecutor's attempt to justify her challenge of Juror 016 on the basis of her age, specifically on account of her marital status, her alleged lack of community ties, and her purported tolerance, was unsupported by the record. In addition, the prosecutor's attempt to justify her strike of Juror 019 on the basis of her youthful age was contradicted by the record. The trial court acknowledged that it had not observed Juror 016's alleged demeanor, and nothing in the record corroborates the prosecutor's allegations.

Cir.2003) ("AEDPA, although emphasizing proper and due deference to the state court's findings, did not eliminate federal habeas review. Where there are real, credible doubts about the veracity of essential evidence and the person who created it, AEDPA does not require us to turn a blind eye."). Critical to our analysis are the ten different reasons of-

fered by the prosecutor for dismissing Jurors 016 and 019. As our analysis reflects, one of the reasons was facially discriminatory, two reasons were contradicted by the record, one reason was not applied to a comparably similar juror who was not struck, and four reasons were without any support in the record.

It also rejected the prosecutor's justifications relating to gender as clearly violative of the Fourteenth Amendment. Thus, contrary to the appellate court's assessment of the record, the trial court did not fulfill its duty by determining that Collins had failed to prove purposeful discrimination when the prosecutor failed to offer any credible justification for striking Juror 016. The appellate court's contrary determination demonstrates that, although it recognized the trial court's duty under *Batson* to determine whether Collins had shown purposeful discrimination, it unreasonably applied that principle in concluding that the trial court had done so.

## IV.

Because the basis for the appellate court's decision was its unreasonable determination of the facts in light of the evidence presented at the trial, and because it also unreasonably applied clearly established federal law as determined by the Supreme Court, we conclude that the state trial appellate court committed constitutional error that warrants the grant of a writ of habeas corpus under section 2254. We therefore reverse the district court's judgment and remand with instructions to grant the petition on conditions it deems appropriate.[16]

**REVERSED and REMANDED.**

HALL, Circuit Judge, dissenting:

The state trial court determined that the prosecutor's proffered race-neutral justifications for striking Juror 016 were credible. This conclusion is entitled to "great deference," *Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), and may not be disturbed on

16. In light of our disposition, we need not address Collins' 8th Amendment argument that his three strikes sentence was cruel and

appeal unless clearly erroneous. *Id.* at 369, 111 S.Ct. 1859; *see also Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (reasoning that because an appellate court has access only to the trial transcript, it is "not as well positioned as the trial court is to make credibility determinations."). Applying this deferential standard, the California Court of Appeal found that the trial court did not err. Because this case is governed by AEDPA, we must defer to the California Court of Appeal's conclusion unless contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or premised on an unreasonable factual finding. 28 U.S.C. § 2254(d).

The majority does not defer to the California Court of Appeal. According to the majority, deference is unwarranted because the Court of Appeal's decision rests upon the "unreasonable factual determination" that "there was' nothing in the present record' to indicate that the trial court did not conduct a searching inquiry in giving the prosecutor the benefit of the doubt or should have questioned the prosecutor's credibility." In point of fact, the Court of Appeal held only that the trial court's *ultimate* decision to credit the prosecutor was not clearly erroneous, thereby adhering to the well-established principle that "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hernandez*, 500 U.S. at 369, 111 S.Ct. 1859.

Having manufactured a reason to disregard the California Court of Appeal's decision, the majority essentially reviews the issue of the prosecutor's credibility *de novo*, concluding that the writ should issue because, under the majority's view, "the

unusual. *But see Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144.

record belies" the conclusion that the trial court assessed evidence which ostensibly undermined the prosecutor's credibility. In doing do, the majority disregards the canonical rule that evaluation of a prosecutor's credibility "lies peculiarly within a trial judge's province," and is entitled to "great deference." *Id.* at 366, 111 S.Ct. 1859.[1]

Viewing the record in its entirety, I am firmly convinced that the California Court of Appeal's decision was reasonable. I respectfully dissent.

\*     \*     \*     \*     \*     \*

The majority identifies four considerations potentially relevant to the prosecutor's credibility. In order to reject the California Court of Appeal's decision, we would have to conclude that the Court of Appeal *unreasonably* determined that, given these four considerations, the trial court did not *clearly err* by crediting the prosecutor's race-neutral explanation. As the following discussion illustrates, the majority falls far short of making this requisite demonstration.

The majority argues that the trial court should have questioned the prosecutor's credibility because she referred to *another* prospective juror, Juror 019, as "young" even though Juror 019 was a grandmother of five. As the majority suggests, the prosecutor may have either been entirely incapable of judging a person's age or may have intentionally misrepresented Juror 019's age to the court. A far more plausible explanation, on the other hand, is that the reference to Juror 019 as "young" was purely accidental. The statement at issue occurred during a discussion about Juror 016, Juror 019, and Juror 006, a young, single white male against whom the prosecutor also exercised a peremptory strike. Because Jurors 016 and 019 were the subject of the *Batson* challenge, both jurors were repeatedly referred to in tandem. Similarly, Jurors 016 and 006 were referred to together several times by the prosecutor, who argued that the two young, single jurors were similarly situated. In this context, it is not surprising that the prosecutor would, on one occasion, flip the designations "006" and "019." Indeed, defense counsel also seemed confused about the numerical designations, once mistakenly referring to Juror 016 as "Ms. 019."[2] Both the trial judge and defense counsel clearly indicated that they understood the prosecutor's justification for striking Juror 019 to be her daughter's drug problem, and the prosecutor's justification for striking Juror 016 to be that, like Juror 006, she was young, single, and potentially tolerant.[3] Under these circumstances, the majority's focus on the prosecutor's misstatement,[4] an issue that was

---

1. Contrary to the majority's view, the state appellate court has no duty to make its own purposeful discrimination determination. Indeed, this would be beyond the scope of the state appellate court's review. In the *Batson* context, a state appellate court's duty is limited to determining whether the *trial court's* purposeful discrimination finding was *clearly erroneous. E.g., Hernandez,* 500 U.S. at 366–67, 111 S.Ct. 1859.

2. After noting that one of the prosecutor's justifications for striking *Juror 016* was a lack of information, defense counsel argued, "if [the prosecutor] wanted more information,

she could have asked the court to ask more questions of *Ms. 019.*"

3. Summarizing the prosecution's argument, defense counsel stated:

"[The prosecutor] has compared Ms. 016 to Mr. 006, which she excused by saying they were both young.... And Ms. 019, certainly, indeed, said that she had ... one daughter which she said had a cocaine problem and that she had been involved with treatment for the daughter."

4. Indeed, the prosecutor's "incorrect factual statement" is the majority's lead argument in

not briefed by the parties, is nothing short of absurd.

The majority also argues that the trial judge should have questioned the prosecutor's credibility because the prosecutor cited a desire to have "more male-female balance" in the jury as a race-neutral basis for excluding Juror 016. The majority places undue emphasis on the prosecutor's arguably improper reference to gender. The prosecutor cited a variety of other race-neutral justifications, including Juror 016's demeanor, youth, marital status, and possible tolerance. There is no indication in Supreme Court precedent, or in cases from our circuit for that matter, that a trial judge's decision to reject *one* of the prosecutor's race-neutral justifications compels the trial judge to reject *all* of the other race-neutral justifications offered by that prosecutor.[5] In the instant case, the trial judge rejected the prosecutor's gender-balance justification, but nonetheless chose to credit the prosecutor's other race-neutral justifications for the challenge.

The majority highlights nothing in the record to indicate that the California Court of Appeal should have deemed this decision *clearly erroneous.*

The third credibility issue raised by the majority also relates to Juror 019 rather than Juror 016. Making an argument not presented by Collins either before this court or before the California Court of Appeal, the majority contends that the prosecution's explanation that Juror 019 had a daughter recently treated for cocaine addiction was pretextual because a white juror passed by the prosecution, Juror 030, also had a child with a cocaine problem. There are several fundamental problems with the majority's analysis of this issue. The issue was not briefed by the parties or discussed at oral argument, and the record itself certainly does not contain clear and convincing evidence that Juror 019 and Juror 030 were, as the majority terms them, "indistinguishably similar."[6] Moreover, even if one accepts

---

support of its conclusion that the trial court clearly erred in considering the prosecutor to be credible.

**5.** The majority quotes this court's decision in *Johnson v. Vasquez,* 3 F.3d 1327 (9th Cir. 1993), for the proposition that " '[w]hen there is reason to believe that there is a racial motivation for the challenge,' we are not 'bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it.' " *Id.* at 1331. This reference is misleading, however. First of all, the *Johnson* court was confronted with a case in which the prosecutor's own statements "strongly suggest[ed] that [he] responded to defense counsel's alleged exclusions of other minority venire members by excluding a member of defendant's race." *Id.* at 1330. Hence, this court's admonition that "when there is reason to believe that there is a racial motivation for the challenge ... we are not bound" was a direct reference to the prosecutor's tacit admission that he was excluding members of the venire based on their ethnicity, an integral element of the *Johnson* decision which is not present in the instant case.

Second, the majority omits crucial language from the *Johnson* decision which bears on its relevance to the case at bar. Specifically, we noted that *"neither the trial courts nor we* are bound to accept" the prosecutor's ostensibly neutral rationales at face value. *Id.* at 1331 (emphasis added). Viewed in context, the language from our *Johnson* decision clarifies the majority's fundamental mistake in this case. Once the trial court decides to "accept at face value" a "list of neutral reasons" proffered by the prosecutor, we are bound by precedent to grant that decision "great deference." *Hernandez,* 500 U.S. at 366, 111 S.Ct. 1859.

Finally, even if the language from *Johnson* were pertinent to the instant case, it nonetheless fails to dispute the point that, even if a trial or appellate court chose not to accept *one* (or more) of the prosecutor's articulated justifications, they would not thereby be compelled to reject *all* of the proffered rationales.

**6.** For example, Juror 019's daughter's cocaine problem were more recent (two years) than was Juror 030's son's problem (six

the majority's shaky premise that Jurors 019 and 030 were "indistinguishably similar," there is no Supreme Court precedent indicating that a race-neutral justification is necessarily pretextual merely because it applies to another member of the venire. Similarly, there is a complete dearth of Supreme Court precedent indicating that a trial judge may not credit a prosecutor's race-neutral justification if there is reason to believe that the race-neutral justification given for *another* juror was pretextual. For these reasons, the prosecutor's conduct vis-a-vis Juror 019 lends very little, if any, support to the majority's conclusion that the trial judge should have questioned the prosecutor's explanation for striking Juror 016.

Finally, the majority contends that the prosecutor's explanation that Juror 016 was a youthful single person, and therefore potentially too tolerant, was not credible. Noting that Juror 016 "believed possession of crack cocaine should be illegal," the majority concludes that the prosecutor's concern that Juror 016 might be too tolerant for this three strikes case was "patently frivolous." The majority's conclusion is simply untenable—the theory that young persons, even those who believe crack cocaine should be illegal and don't expressly indicate any heightened tolerance for drug offenders, may be less willing to impose harsh sentences for drug possession than their older counterparts in the venire can hardly be considered unreasonable, much less "implausible or fantastic."

Indeed, the majority's own analysis demonstrates precisely why the Court of Appeal properly deferred to the trial court's judgment. The majority strains to find that the credibility issues discussed above constitute "clear and convincing" evidence which not only undermines the prosecutor's credibility, but makes clear that the prosecutor's articulated rationales for her peremptories were "wholly implausible." Viewing the majority's credibility argument generously, however, their conclusion is merely that the trial court had several potential reasons to question the prosecutor's credibility. Presumably, the trial court also had a variety of potential reasons to believe that the prosecutor *was* credible, including the prosecutor's ostensibly truthful comparison between Juror 016 and Juror 006. Significantly, the trial judge also had the ability to observe the prosecutor's demeanor to determine whether she appeared to be telling the truth, evidence which would not be evident in the record. Both the majority opinion and the record are devoid of any basis for concluding that the prosecutor's statements and demeanor left the trial judge with *no permissible alternative* but to reject the prosecutor's race-neutral justifications. *See Hernandez,* 500 U.S. at 369, 111 S.Ct. 1859 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). *See also Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (stating that Sec-

years). There may also have been significant differences in the demeanor of each prospective juror that are not evident from the trial transcript.

By way of contrast, compare the majority's conclusion that Jurors 019 and 030 are indistinguishable to its own discussion of the dissimilarity of Jurors 006 and 016, which is relegated to a footnote. In support of its claim that the prosecutor's alleged rationales

for dismissing Juror 016 (her marital status and lack of community ties) were pretextual, even though Juror 006 was also dismissed on the same grounds, the majority summarily concludes that "[t]he record reveals ... that Jurors 006 and 016 had very different backgrounds and thus did not possess comparable characteristics,' " even though Jurors 006 and 016 "were both single, no ties."

tion 2254 "demands that state court decisions be given the benefit of the doubt").

For the foregoing reasons, I would affirm.