**Hurshel WILLIAMS, Petitioner–Appellant,**

v.

**Larry RHOADES; Matt Fontaine, Respondents–Appellees.**

No. 02–15280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Filed Jan. 16, 2004.

Donald M. Horgan, Riordan & Horgan, San Francisco, CA, for the petitioner-appellant.

Brian Alvarez, Deputy Attorney General, California Attorney General, Fresno, CA, for the respondents-appellees.

Before FARRIS, TROTT, Circuit Judges, and WEINER,* Senior District Judge.

## OPINION

FARRIS, Circuit Judge.

Hurshel Williams appeals the district court's ruling denying his petition for habeas corpus, claiming that race motivated the prosecutor's peremptory strike of the only African American from his jury in violation of the Equal Protection principles articulated in *Batson v. Kentucky*. The record reflects that the state courts did not unreasonably apply clearly established law or unreasonably determine the facts in denying Williams' *Batson* challenge. We affirm.

## *Background*

Williams was charged in California state court with conspiracy to defraud, misappropriation of public funds, and grand theft by false pretenses in connection with a scandal at the Lost Hills Water District. The State alleged that Williams, a supplier to the District, submitted false invoices with the aid of Dennis Stowe, a District employee. Stowe received kickbacks from Williams in the form of checks written to fictitious payees. Stowe or his mother, Alice Stowe, cashed the checks at the bank where she worked as a teller.

Williams' first trial ended when the jury was unable to reach a unanimous verdict. During *voir dire* before the second trial, the parties questioned "Juror X," a 60–year–old African American woman, about her knowledge of the case through press coverage, and her experience testifying in a prior murder trial.

When the prosecutor later used a peremptory challenge to strike Juror X, Williams objected, claiming the challenge was improperly race-based under *People v. Wheeler*, the California version of *Batson v. Kentucky*.[1] The trial court ruled that Williams made a *prima facie* showing of discrimination and required the prosecutor to give reasons for striking Juror X.

The prosecutor explained that Alice Stowe, who "happen[ed] to be African American," would testify about the kickback checks written to her son. He predicted that Alice Stowe would be a hostile witness since she originally had been charged in the conspiracy and was granted immunity so the prosecutor could compel her testimony. The prosecutor stated that "Alice Stowe is almost in virtually in the same situation as [Juror X]," noting that the two had sons of the same age. In light of the similarities, the prosecutor feared that Juror X might not view Stowe's testimony objectively.

The following comments form the centerpiece of Williams' *Batson* challenge:

This is the fourth time now that I have tried personally one of these Lost Hills Water District cases. The one on Dennis Stowe lasted all summer, year ago to the day. I left—deliberately left a black juror on that case. I felt it was the responsibility, the consensus of the community in the form of the verdict. I think it gives more weight and more authority to the jury.

Quite frankly, when there are all different ethnic persuasions, here's what we find to be the truth: That the jury came back and convicted in the Donald

---

* Hon. Charles R. Weiner, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. *People v. Wheeler*, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Moore case [*sic*]. The ... foreman of that jury was, in fact, black. And in the last case that I tried, that one hung up, it was the case of People versus Hurshel Williams that hung up.

One of the reasons it hung up, I had an African American juror who went back and nullified that jury because of race, solely because of race, and I had left that juror on, again, because I wanted to make a statement to the community that this was a fair and impartial jury. The lesson that I learned was that I had ignored some significant factors in that juror's background, one that I would have ignored was that juror was of any racial background [*sic*].

Just as the Court will recognize yesterday, I have challenged three jurors, two of them were white, and the third juror of whom was black. Two of those jurors I specifically excused because I was concerned about jury nullification. . . .

As to jury nullifications, your Honor, I struggle with this. In this country, we don't have a lot of black jurors to sit on juries. There's nothing I would want more of. I mean that truly. But in this specific case, with this specific juror—this is the only black juror that I have excused to my knowledge since I've been back in the district attorney's office last April—but this particular juror, having looked at her answers and watched the way she responded to me, I felt I had no other alternative but to represent my client and to exercise that peremptory challenge.

Williams argued these statements showed the prosecutor struck Juror X because she was African American, like the problem juror in the first trial. The trial court agreed that Juror X had acted differently toward the prosecutor, and found it curious that she could not remember her prior trial experience, given that it was a murder trial. The court then asked the prosecutor what had occurred in the first trial. The prosecutor explained that several angry jurors told him that the African American juror had refused to deliberate, stating he would never vote to convict. The prosecutor concluded:

I have my mind set. I've bent over backwards. I have a defendant of African American persuasion, at least one person in the community that matches their ethnic persuasion on that case. That's the point I'm trying to make.

But I think the lesson that I've learned is that you can't be blind to the other things that they're telling you ... You can't assume that, well, okay, because they happen to be of the same ethnic persuasion of the defendant, I'm going to allow them to be on the jury. We can't be blind in our society. There are people whose sole purpose is to get on a jury just solely so they can nullify the verdict.

. . .

That's why I excused [another juror] yesterday, and that's why I excused [Juror X] today. And my initial reaction ... if [Juror X] had not been black, I would have excused her as soon as she was done. I might have excused her as to cause because she testified in a murder case, couldn't remember, et cetera, et cetera. Because she was black, I bent over backwards to try to find a justification in my mind for keeping her, and I couldn't. That's why I excused her.

The trial court overruled Williams' *Batson/Wheeler* objection, stating:

I do not think, as I analyze it, that the one part of the rationale of the prosecutor is valid. I do not think that because I do not think that it can be fairly said that [Juror X] came in here and wanted to serve someplace so that she could

return a verdict in favor of Mr. Williams because she shared the same ethnic background or race ...

So with all due respect, I do not believe it to be valid that one can say that in a case such as this, one will not keep a black person because that person is going to not follow the law.

On the other hand, having set that aside, I think that the other reasons advanced by [the prosecutor] are entirely legitimate. I noticed her demeanor. I notice there was a difference between the way she responded to one side versus the other, and I notice her evasive answers—what I considered to be in a polite way, evasive answers. With regard to her attitude and her prior involvement and those factors, I think they are legitimate reasons for the exercise of the peremptory challenge....

Williams was found guilty and he appealed to the California Court of Appeal, which affirmed the convictions. In addressing the *Batson* issue, the court held that the trial court had misunderstood the prosecutor's comments about the prior hung jury. In the court's view, the prosecutor did not say that Juror X would ignore the law because an African American had done so in the first trial. Instead, he was simply explaining his general preference for racial diversity on juries and practice of working to ensure diversity in selecting juries. The California Court of Appeal held that the reasons given for striking Juror X were race-neutral, that the trial court had adequately evaluated the prosecutor's credibility, and that Williams failed to prove purposeful discrimination.

After properly exhausting his state remedies, Williams filed this petition under 28 U.S.C. § 2254, which a magistrate denied.

***Discussion***

■■■ We review *de novo* a district court's denial of a petition under 28 U.S.C. § 2254. *Lewis v. Lewis,* 321 F.3d 824, 829 (9th Cir.2003). A federal court will grant habeas relief only if the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S. § 2254(d)(1)-(2). We presume that "state courts know and follow the law," and that their factual findings are correct in the absence of clear and convincing evidence to the contrary. *Lewis,* 321 F.3d at 829 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)); 28 U.S.C. § 2254(e)(1). We review the last reasoned decision of the state court, which in this case was made by the state court of appeal. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). But because that court examined and adopted some of the trial court's reasoning, the trial court ruling is also relevant. *Lewis,* 321 F.3d at 829.

■■■ Our review of a habeas ruling is limited by the Certificate of Appealability. 28 U.S.C. § 2253(c)(1), (3). The COA was granted "as to the issue of whether the district court erred by determining that the state court's denial of petitioner's *Batson–Wheeler* challenge was not an unreasonable application of established federal law." Since the COA did not exclude review of the factual underpinnings of the state court rulings and Williams' claim has always hinged on how the facts are characterized, we also may review whether the state courts unreasonably construed the facts. 28 U.S.C. § 2254(d)(2). *See Furman v. Wood,* 190 F.3d 1002, 1005 (9th Cir.1999) (construing COA liberally to re-

view issue that COA did not specifically exclude).

■ Williams' *Batson* challenge is evaluated in three steps. First, he must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race. *Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712. Then, the burden "shifts to the State to come forward with a neutral explanation for challenging black jurors." *Id.* at 97, 106 S.Ct. 1712. If that is done, the trial court must determine whether Williams carried his ultimate burden of proving purposeful discrimination. *Id.* at 98, 106 S.Ct. 1712.

■ Williams first contends that the state courts misapplied the second *Batson* step.[2] At this phase, any explanation based on something other than race will constitute a race-neutral reason unless discriminatory intent is inherent in that explanation. *Hernandez v. New York,* 500 U.S. 352, 359–60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The reasons must be taken at face value at this step because any determination about the credibility of the explanation is reserved for the third step, where the court ultimately determines whether discrimination occurred. *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The facial validity of proffered reasons is an issue of law reviewed *de novo.* *Tolbert v. Page,* 182 F.3d 677, 680 n. 5 (9th Cir.1999).

The prosecutor gave four reasons for striking Juror X: (1) he feared she would identify with Alice Stowe and fail to view Stowe's testimony objectively; (2) her apparent lack of forthrightness about her prior trial experience; (3) her demeanor evincing bias in favor of the defense; and, (4) her knowledge of the case through press coverage. Williams does not dispute that, taken at face value, these reasons are valid, "based on something other than the race of the juror," specific to the case, and did not appear to be mere proxies for racial stereotyping or discrimination. *Hernandez,* 500 U.S. at 360, 111 S.Ct. 1859. They are thus facially valid.

■ Williams argues, however, that in discussing the African American juror who had refused to deliberate in the first trial, the prosecutor gave an additional reason for striking Juror X that the court of appeal failed to recognize as discriminatory. He claims the prosecutor made it clear in those comments that he did not want Juror X on the jury because she was the same race as the recalcitrant juror from the first trial.

The context and entirety of the prosecutor's statement do not support Williams' interpretation. The comments merely describe the prosecutor's preference and practice of seating jurors of the same race as the defendant in an effort to bolster community confidence in the verdict. That practice had backfired in the first trial when he ignored race-neutral warning signs displayed by an African American juror. Because of that experience, the prosecutor explained, he could not ignore his similar concerns over Juror X's willingness to follow the law. The prosecutor did not reveal that he had singled out Juror X for a peremptory because of her race. Instead, he emphasized that he would have immediately struck her, but "because she was black [he] bent over backwards to try to find a justification ... for keeping her" on the jury. His comments were a clumsy yet benign attempt by the prosecutor to bolster his claim of race-neutrality by providing context to his proffered reasons. They do not evince an inherent racial bias.

Williams' confusion is understandable. In a society where racial discrimination

<hr/>

**2.** The parties do not dispute that a *prima facie* showing of discrimination was made. *See* *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

occurs frequently, it is easy to find it even in its absence. We split hairs over test scores, although everybody knows that admission to college is not and cannot be based on test scores alone. A mention of gender sometimes elicits a question of discrimination even in situations in which gender is merely descriptive. The situation might be as Johnny Cash indicated in an interview for publication near the end of his life:

> Ques. Do you think of yourself as a Christian artist?

> Ans. I'm an artist who is Christian. I'm not a Christian artist.

When one's race or gender or religion is not used to give one an advantage at the expense of another, its mention solely in a descriptive context is not discrimination per se.

■ Williams argues that in deeming the prosecutor's comments on the first trial "invalid," the trial court made a factual determination that race motivated the peremptory strike. He contends that in reinterpreting the comments, the appellate court usurped the trial court's fact-finding function. The second *Batson* step answers a legal, not a factual question. The appellate court is required to independently review those comments to determine whether they evinced discriminatory intent. *Tolbert,* 182 F.3d at 680 n. 5. The California Court of Appeal did so. It also correctly analyzed the import of the prosecutor's words after examining them in context. It did not unreasonably apply federal law in holding the prosecutor satisfied his burden under the second *Batson* step.

Williams next argues that the trial court abdicated its duty to perform the third *Batson* step. He claims that after setting aside the single, invalid reason, the trial court simply accepted the other proffered reasons—without analyzing the prosecutor's credibility—to find legitimate grounds for striking Juror X.

■ At the third *Batson* step, the trial court ultimately determines whether there was intentional discrimination. *Hernandez,* 500 U.S. at 359, 111 S.Ct. 1859. "The decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Id.* at 365, 111 S.Ct. 1859. The trial court must not simply accept the proffered reasons at face value; it has a duty to "evaluate meaningfully the persuasiveness of the prosecutor's [race]-neutral explanation[ ]" to discern whether it is a mere pretext for discrimination. *United States v. Alanis,* 335 F.3d 965, 969 (9th Cir.2003).

■ Although explicit findings on credibility were never made, the state court of appeal examined the trial court's ruling and concluded it had made a "sincere and reasoned" attempt to evaluate the prosecutor's credibility as *Batson* required. On habeas review, state appellate court findings—including those that interpret unclear or ambiguous trial court rulings—are entitled to the same presumption of correctness that we afford trial court findings. *See Palmer v. Estelle,* 985 F.2d 456, 459 (9th Cir.1993) (applying presumption of correctness to appellate court holding that ambiguous and unclear trial court ruling was proper application of *Batson); see also Pollard v. Galaza,* 290 F.3d 1030, 1033 (9th Cir.2002).

Applying this presumption, the court of appeal reasonably construed the trial court's oral ruling. During argument on the challenge, the trial court acknowledged that Juror X had been evasive and distant with the prosecutor, but friendly and open with defense counsel. In denying the *Batson* challenge, the trial court found "entirely legitimate" reasons for striking Juror X, based on her demeanor, the way she "responded to one side versus the other," and her "evasive answers." The trial court did not merely accept the prosecu-

tor's explanation at face value; it evaluated his statements in light of the evidence to discern whether he was being truthful. The state court of appeal reasonably concluded that the trial court fulfilled its duty under the third *Batson* step.

 Williams finally challenges the state courts' findings that he failed to meet his burden of proof under the third *Batson* step. Because a trial court's finding on purposeful discrimination rests largely on credibility, "a reviewing court ordinarily should give those findings great deference." *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712. For us to set aside the state courts' findings on discriminatory intent, Williams must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We must be left with a firm conviction that the determination made by the state court is wrong and the one urged by Williams is correct. *See Torres v. Prunty,* 223 F.3d 1103, 1107 (9th Cir.2000) (quoting *Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000)).

The trial judge had the unique opportunity to observe the demeanor of the prosecutor as he justified the peremptory strike, as well as Juror X as she interacted with counsel during voir dire. *See Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859 ("As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'Peculiarly within a trial judge's province.'") (Citations omitted). Upon doing so, the trial court saw what the prosecutor had seen; Juror X seemed friendly with defense counsel but was cold and evasive toward the prosecutor, particularly when pressed for details about her prior trial experience. As the primary arbiter of credibility, the trial court was entitled to find this evinced Juror X's possible bias. *See Burks v. Borg,* 27 F.3d 1424, 1429 & n. 3 (9th Cir. 1994) (noting that prosecutor's evaluation

of a juror's demeanor, tone, and facial expressions may lead to a "hunch" or "suspicion" that the juror might be biased, and that a peremptory challenge based on this reason would be legitimate); *see also, e.g., United States v. Power,* 881 F.2d 733, 740 (9th Cir.1989) (accepting as legitimate prosecutor's explanation that a juror's "fidgeting and looking around as he sat in the jury box … made the prosecutor believe that the individual would not be an attentive juror"). The trial court reasonably found the prosecutor to be credible when he expressed concern over Juror X's ability to be fair.

Williams contends that the record undermines some of the prosecutor's reasons for the peremptory, exposing them as pretexts for discrimination. *See McClain v. Prunty,* 217 F.3d 1209, 1221 (9th Cir. 2000) ("Where the facts in the record are objectively contrary to the prosecutor's statements, serious questions about the legitimacy of a prosecutor's reasons for exercising peremptory challenges are raised.") He argues that two jurors had voted to acquit after deliberating for two days, not one, as the prosecutor claimed. This contention fails. The prosecutor's comments about the first trial were not reasons for the challenge but merely background information to support his race-neutral explanation. Contrary to Williams' assertion, the prosecutor stated that the African American had been "one of the reasons" the jury had hung; he did not identify that juror as the sole cause of the mistrial.

The record fails to support Williams' assertion that in striking Juror X because she was in the "same situation" as Alice Stowe, the prosecutor revealed a discriminatory motive because Stowe is African American. The prosecutor believed Juror X might identify with Stowe for reasons other than race; they had sons of a similar age. It was Williams who claimed that the

women's race was on the prosecutor's mind in discussing their similarity. Upon assessing the prosecutor's credibility, the trial court could properly reject Williams' claim and conclude the prosecutor was genuinely concerned that the non-racial similarities might hinder Juror X's ability to view Stowe's testimony objectively.

The record refutes Williams' claim that the prosecutor revealed a discriminatory motive by failing to strike a white juror who, like Juror X, knew about the case from press coverage. Disparate treatment of otherwise similarly situated jurors can support the inference that reasons given for a peremptory challenge are mere pretexts. *Lewis,* 321 F.3d at 832–33; *but see Burks,* 27 F.3d at 1429 (rejecting assertion that *Batson* violation occurs "whenever prospective jurors of different races provide similar responses and one is excused while the other is not"). As the prosecutor noted, the white juror did not appear to know as much as Juror X; he was only vaguely familiar with some of the names and could recall few specifics. In contrast, Juror X knew about the case from reading the newspaper and watching television every day, she remembered fairly clearly what had been reported, and she recalled specific facts.

The California Court of Appeal reasonably applied federal law and reasonably interpreted the facts in holding (1) that the prosecutor proffered race-neutral reasons for striking Juror X, (2) that the *Batson* framework had been properly applied by the trial court, and (3) that Williams failed to meet his ultimate burden of proving that the prosecutor was motivated by Juror X's race in using a peremptory challenge to remove her from the jury panel.

AFFIRMED.