CALLAHAN, Circuit Judge:
 

 A federal jury convicted Appellants, Chang Guo You and Mi Ae Yim, of violating 8 U.S.C. § 1324(a)(1)(A)(iii) for harboring illegal aliens. They now appeal their convictions and sentences. You argues that the court erred in (1) denying his motion for a retrial on double jeopardy grounds and (2) declining to grant him a downward departure during sentencing pursuant to U.S.S.G. § 5K2.0 or § 5K2.13. You and Yim both contend that the district court erred in instructing the jury. Finally, Yim argues that the district court erred in its determination that Yim failed to show that the government purposefully discriminated in making its peremptory challenges. We disagree with each contention and affirm the district court.
 

 I
 

 This appeal follows an initial trial, during which the court declared a mistrial, a subsequent retrial, and, finally, the sentencing hearing. We outline the proceedings’ three stages below.
 

 A
 

 The district court began a jury trial on March 31, 2003. On the second day of trial, the government called its first Spanish-speaking witness, but Yim objected to the government’s interpreter. After the defense conducted a cross-examination, the court determined that the interpreter was not court-certified. The court suggested tape-recording the translation to protect its accuracy. The court also observed that You’s counsel spoke Spanish and could object during trial if the translation were inaccurate. The court then asked if defense counsel wanted to make any further record.
 

 You’s counsel responded, somewhat cryptically, “No further record, just with the exception of the previous one imposed.” Yim’s counsel, however, again objected and moved for a mistrial, noting that he wished to “abort and begin anew with a different jury.” Yim’s counsel went on: “I’ll state categorically on the record that I wouldn’t interpose any double jeopardy problem.”
 

 The court then explored the possibility of the government finding another interpreter. You’s counsel stated that he had no objection to this approach, while Yim’s counsel restated his position that “I think we should just terminate and begin anew.”
 

 The court took a twenty-four minute recess to allow the government an opportunity to find another interpreter. The government, however, was unable to contact any court certified interpreters during the break. The court subsequently stated that it was going to declare a mistrial and schedule a new trial. The judge asked the attorneys if either wished “to make any record?” Counsel for both defendants responded that they did not. The judge then called in the jury and dismissed them. The court again asked the defendants’ counsel if they had anything further. They again responded that they did not.
 

 After the court set a new trial date, You and Yim moved to dismiss the indictment on double jeopardy grounds. The district court denied their motion. Approximately two months after the initial trial, the court conducted a retrial.
 

 B
 

 During jury selection of the second trial, the government exercised four of its peremptory challenges, all on women. Yim objected, claiming that the challenges were gender-based and discriminatory. The district court agreed that Yim had made a
 
 *963
 
 prima facie showing of discrimination and asked the government to explain its rationale for its peremptory challenges.
 

 Regarding the first challenged juror, the government explained that the juror lacked sufficient age and maturity level. The government said that the second juror would not look the prosecutor in the eye, raising the specter that the juror might be unsympathetic to the government. The third juror was an artist who regularly used a pen name when signing pictures. This allegedly presented a problem because certain witnesses had used aliases. The government explained that the final juror held an administrative job in which she did not deal with people and she seemed to lack the intellect to serve on a jury. The district court considered these reasons and concluded that they were not gender-based.
 

 After the presentation of evidence, the district court gave the jury the following instruction:
 

 In order for a defendant to be guilty of Count I, the government must prove the following elements beyond a reasonable doubt:
 

 First, Roger Quezada Raudales, aka Hector Sierra-Orlando, was an alien;
 

 Second, Roger Quezada Raudales, aka Hector Sierra-Orlando, was not lawfully in the United States;
 

 Third, a defendant knew or was in reckless disregard of the fact that Roger Quezada Raudales, aka Hector Sierra-Orlando, was not lawfully in the United States; and
 

 Fourth, a defendant concealed, harbored, or shielded Roger Quezada Rau-dales, aka Hector Sierra-Orlando, for the purpose of avoiding Roger Quezada Raudales, aka Hector Sierra-Orlando, detection by Immigration authorities.
 

 The court gave a nearly identical instruction regarding the other allegedly-concealed alien. It changed only the count number and the name of the second alien.
 

 You and Yim objected to these instructions, arguing that the court must place the word “knowingly” before “concealed, harbored, or shielded.” The court overruled the objections and gave the instructions as proposed.
 

 The court did, however, initially give a stock Ninth Circuit instruction defining “knowingly.” The instruction stated that “[t]he government is not required to prove that the defendant knew that his or her acts or omissions were unlawful.” Shortly after giving this instruction, however, the court noted at side-bar that it conflicted with an element of the offense that a defendant “knew or was in reckless disregard” of the fact that the alien was not lawfully in the United States. The district court then reread the instruction to the jury, deleting the language: “the government is not required to prove that the defendant knew his or her acts or omissions were unlawful.”
 

 During deliberations, the jury asked whether the judge mistakenly omitted the word “knowingly” from the verdict form. The jury asked .“if this is an oversight and it was accidentally omitted, as it was our understanding that you, the Judge in this case, intentionally required it to be added.” After discussing the question with counsel, the court responded: “You must not take anything I may have said or done during the course of the trial as indicating what your verdict should be. The verdict form is for your use in recording your verdict, it is not a substantive instruction on the law.” After further deliberation, the jury returned a guilty verdict.
 

 C
 

 During sentencing, You requested a downward departure under two different
 
 *964
 
 prongs of the Sentencing Guidelines. He first requested a departure for diminished mental capacity pursuant to U.S.S.G. § 5K2.13, which allows for a departure where the defendant “committed the offense while suffering from a significantly reduced mental capacity.” You argued that he had difficulty with the English language and simply did not understand that what he had done was illegal. The district court acknowledged that You did not “have an intimate comprehension of the American judicial system” but noted that You had experience with the legal system regarding his political status and was the owner of a successful business. The court concluded, “I just can’t see that the 5K2.13 diminished capacity guideline applies here and I’m not going to exercise my discretion to grant a downward departure based on that ground and for the reasons stated.”
 

 You also requested a downward departure pursuant to U.S.S.G. § 5K2.0, which allows a departure “in the exceptional case in which there is present a circumstance that the Commission has not identified.” The district court expressed frustration with the Guidelines, but concluded, “I don’t think it’s a case that under the existing case law I would be acting appropriately if I exercised my discretion to grant a 5K2 or
 
 Koon
 
 kind of departure.”
 
 [1]
 
 The court ultimately sentenced You to five months in the custody of the Bureau of Prisons, five months of home-detention and two years of supervised release. It sentenced Yim to one month in prison, eleven months of home confinement with electronic monitoring and three years of supervised release.
 

 You and Yim now appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.
 

 II
 

 Appellants raise four issues on appeal. We address each in turn.
 

 A
 

 The first issue is whether the district court erred in denying You’s motion to dismiss the indictment against him on double jeopardy grounds after the court declared a mistrial. We review the district court’s denial of You’s motion to dismiss de novo.
 
 See United States v. Ziskin,
 
 360 F.3d 934, 942 (9th Cir.2003). We accept the district court’s factual findings unless they are clearly erroneous.
 
 See id.
 

 Because jeopardy had already attached when the district court declared the mistrial, the court could order a retrial in two circumstances: (1) the defendant consented to the mistrial or (2) manifest necessity caused the mistrial.
 
 See United States v. Gaytan,
 
 115 F.3d 737, 742 (9th Cir.1997). Both parties agree that You did not
 
 expressly
 
 consent to the mistrial. We conclude that You
 
 impliedly
 
 consented to the mistrial.
 
 [2]
 

 Implied consent, like express consent, “removes any double jeopardy bar to retrial.”
 
 United States v. Smith,
 
 621 F.2d 350, 351 (9th Cir.1980). Nevertheless, a court may infer consent “ ‘only
 
 *965
 
 where the circumstances positively indicate a defendant’s willingness to acquiesce in the mistrial order.’ ”
 
 Weston v. Kernan,
 
 50 F.8d 633, 637 (9th Cir.1995) (quoting
 
 Glover v. McMackin,
 
 950 F.2d 1236, 1240 (6th Cir.1991)). The record here shows such an acquiescence by You.
 

 Two of our cases provide guidance for finding implied consent. First, in
 
 Weston,
 
 we held that a defendant had not impliedly consented where he moved for a mistrial but “made clear that [he] only desired a mistrial if jeopardy would attach.” 50 F.3d at 637. Second, in
 
 Gaytan,
 
 we held that a defendant had not consented where “the [trial] judge admonished the prosecutor and ordered the case dismissed, without pausing for any discussion of the possibility of other remedies, all in a matter of seconds.” 115 F.3d at 743. In concluding that the defendant had not impliedly consented, we noted that the court had “acted in a burst of anger” and had “left the bench precipitously without affording counsel any opportunity for further col-logues.”
 
 Id.
 

 .
 
 The instant trial presents a far different situation. The district court provided You with ample opportunity to object to the mistrial. When the parties first discovered the problem with the interpreter, the court discussed the situation with counsel and offered several options for avoiding a mistrial. You’s counsel’s only contribution, however, was to agree that the government could attempt to find an alternate interpreter. Once the court established that an alternate interpreter was not available, You’s counsel did not opine on the proper course of the trial. You’s silence gave the district court no way of knowing if he opposed a new trial. Yim’s counsel, meanwhile, clearly stated his desire for a mistrial and that he would not interpose a double jeopardy objection to a new trial.
 

 Where one defendant moves for a mistrial, and the other defendant, despite adequate opportunity to object, remains silent, the silent defendant impliedly consents by that silence to the mistrial and waives the right to claim a double jeopardy bar to retrial. You’s counsel’s failure to participate in the colloquy and repeated failure to take advantage of the trial judge’s offer to make a record thus constituted an implied consent to the mistrial.
 

 B
 

 We next address whether the district court erred in instructing the jury on the
 
 mens rea
 
 element of the charged offenses by failing to insert the word “knowingly” in the jury instructions. Whether the jury instructions misstated the elements of a statutory crime is a question of law, which we review de novo.
 
 United States v. Frega,
 
 179 F.3d 793, 806 n. 16 (9th Cir.1999). Here, the facts and case law indicate that the court did not err.
 

 Two cases involving § 1324 convictions cast light on this issue. In
 
 United States v. Barajas-Montiel,
 
 185 F.3d 947, 953 n. 7 (9th Cir.1999), the district court instructed the jury that “the defendant had to know or be in reckless disregard of the fact that the person being brought into the United States had not received prior official authorization to do so.” This instruction was in error because it did “not require the jury to find that [the] defendant intended to violate immigration laws.”
 
 Id.
 
 We nevertheless concluded that the error did not justify reversal because the record “overwhelmingly” indicated that the defendants had knowingly violated the law.
 
 Id.
 
 at 953.
 

 Similarly, the district court in
 
 United States v. Nguyen,
 
 73 F.3d 887, 894 (9th Cir.1995), instructed the jury that the defendant had to have knowledge that the alien was not lawfully in the United States
 
 *966
 
 but failed to instruct the jury that any criminal intent be shown. Specifically, the district court failed to instruct the jury that the government must prove that the defendant had “acted with criminal intent to evade the INS.”
 
 Id.
 
 In reversing, we held that the court should have instructed the jury “that it must find that the defendant knew that the individuals were aliens and that he off-loaded them at other than a port of entry,
 
 intending to violate the law." Id.
 
 (emphasis added). As we stated, “[kjnowledge and criminal intent are both required.”
 
 Id.
 

 Adequate jury instructions, therefore, must require a finding that the defendants intended to violate the law. The instructions here contained such a requirement. The court instructed the jury that it must find that Appellants had acted with
 
 “the purpose
 
 0/avoiding [the aliens’] detection by immigration authorities.” (emphasis added). This instruction is synonymous with having acted with necessary
 
 intent
 
 as required in
 
 Barajas-Montiel
 
 and Nguyen.
 
 [3]
 
 The court’s instructions therefore contained the necessary
 
 mens rea
 
 element. Adding the word “knowingly,” as Appellants requested, would have been redundant.
 

 C
 

 Third, we consider whether the district court believed that it had discretion to depart from the Sentencing Guidelines. If the court believed that it lacked discretion to depart but, in fact had such discretion, we review that conclusion de novo.
 
 United States v. Brown,
 
 985 F.2d 478, 481 (9th Cir.1993). If, however, the court knew that it had discretion but refused to exercise that discretion, we may not review that decision.
 
 United States v. Smith,
 
 330 F.3d 1209, 1212 (9th Cir.2003). You contends that the former is true: that the district court erroneously believed that it lacked discretion to depart from the Sentencing Guidelines.
 

 You first argues that the district court mistakenly believed that it could not depart on the ground that he suffered from a “significantly reduced mental capacity.” U.S.S.G. § 5K2.13. He specifically contends that he has difficulty with the English language that significantly impairs his ability to “understand the wrongfulness of the behavior comprising the offense” and that this difficulty fits squarely within the criteria of § 5K2.13. Accordingly, he argues that the court erred when it decided that § 5K2.13 did not apply to him.
 

 The record, however, indicates that the court simply exercised its discretion not to apply such a downward departure. The district court recited several reasons why You did not lack an understanding of the offense, such as his experience with the American judicial system and his success as an American businessman. The court stated that “I’m not going to exercise my discretion to grant a downward departure based on that ground and for the reasons stated.” These statements show that the court considered the facts of the case and declined to exercise its discretion based on those facts. Accordingly, we lack jurisdiction to review the district court’s decision not to depart downward.
 
 [4]
 

 
 *967
 
 You’s second contention is that the district court had discretion to depart under § 5K2.0 because his situation presents “the exceptional case in which there is present a circumstance that the Commission has not identified.” U.S.S.G. § 5K2.0;
 
 see also Koon,
 
 518 U.S. at 106, 116 S.Ct. 2035.
 

 In considering whether to depart downwardly on this basis, a district court considers whether factors take the case outside the “heartland” of the applicable guideline.
 
 Koon,
 
 518 U.S. at 109, 116 S.Ct. 2035. The trial court, however, does not have unfettered freedom to impose a lighter sentence than the Guidelines suggest. Rather, a court may downwardly depart when “there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.” 18 U.S.C. § 3553(b).
 

 The question here is whether the court believed it had authority to consider these grounds in granting You a downward departure. The district court expressed frustration that, sometimes, “these guidelines are just dead wrong,” and noted that “I think this is one of those cases.” It also commented that the guidelines exceeded the seriousness of You’s offense and that “there’s nothing to be gained by locking him up.” The court nevertheless stated, “I don’t think it’s a case that under the existing case law I would be acting appropriately if I
 
 exercised my discretion
 
 to grant a 5K2 or
 
 Koon
 
 kind of departure.” (first emphasis added). Even more tellingly, the court stated that, while “an argument can be made either way,” it felt that “in this district, for illegal harboring, persons who have people illegally employed, I don’t think that this is outside the ordinary case.”
 

 We have held that a “court’s silence regarding authority to depart is not sufficient to indicate that the court believed it lacked power to depart.”
 
 United States v. Garcia-Garcia,
 
 927 F.2d 489, 491 (9th Cir.1991);
 
 accord United States v. Davis,
 
 264 F.3d 813, 816-17 (9th Cir.2001). Here, although the court found the sentence unduly harsh, it concluded that the facts did not take the sentence outside the “heartland” of Guideline cases. We thus conclude that the district court declined to exercise its discretion to depart downwardly. Accordingly, we lack jurisdiction to review this sentencing decision.
 

 D
 

 Finally, we address the district court’s determination under
 
 Batson v.
 
 Kentucky
 
 [5]
 
 that Yim failed to show purposeful discrimination by the government in making its peremptory challenges. When considering a
 
 Batson
 
 challenge, we review de novo whether a prosecutor’s proclaimed reason for exercising a peremptory challenge was an adequate explanation.
 
 See United States v. Steele,
 
 298 F.3d 906, 910 (9th Cir.2002). “A trial court’s determination on discriminatory intent is a find
 
 *968
 
 ing of fact entitled to deference and is reviewed for clear error.”
 
 Id.
 

 A trial court must engage in a three-step process for determining whether the government exercised its peremptory challenges for a discriminatory purpose:
 

 First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of [gender]. Second, if that showing has been made, the prosecution must offer a [gender]-neutral basis for striking the juror in question. Third, in light of the parties’ submissions, the trial court must determine whether the defendant has shown purposeful discrimination.
 

 United States v. Alanis,
 
 335 F.3d 965, 967 (9th Cir.2003) (quoting
 
 Miller-El v. Cockrell,
 
 537 U.S. 322, 328-29, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)) (alterations in original).
 

 Yim does not dispute that the court followed the first two steps. At issue is the third step: whether the court failed to evaluate meaningfully the persuasiveness of the prosecutor’s gender-neutral explanations. This step requires that a district court do more than label the government’s gender-neutral explanations “plausible.”
 
 Alanis,
 
 335 F.3d at 969. Instead, the district court must “make a deliberate decision whether purposeful discrimination occurred.”
 
 Id.
 
 “At a minimum, this procedure must include a clear record that the trial court made a deliberate decision on the ultimate question of purposeful discrimination.”
 
 Id.
 
 at 968 n. 2.
 

 The district court here observed the jury selection firsthand and was in the best position to evaluate the prosecution’s explanations for exercising its peremptory challenges.
 
 See Turner v. Marshall,
 
 121 F.3d 1248, 1251 (9th Cir.1997). A trial court’s findings on purposeful discrimination rest largely on credibility.
 
 Williams v. Rhoades,
 
 354 F.3d 1101, 1109 (9th Cir. 2004). Courts measure credibility “by, among other factors, the prosecutor’s demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.”
 
 Collins v. Rice,
 
 365 F.3d 667, 679 (9th Cir.2004) (quoting
 
 Miller-El,
 
 537 U.S. at 339, 123 S.Ct. 1029). Thus, credibility findings are entitled to great deference.
 
 Batson,
 
 476 U.S. at 98 n. 21, 106 S.Ct. 1712;
 
 Williams,
 
 354 F.3d at 1109.
 

 Regarding the first challenge, the trial court accepted the prosecutor’s explanation that the juror lacked the sufficient age and maturity level, noting that the juror had answered a question with “a series of giggling, sort of nervous kind of responses.” Concerning the second challenge, the court agreed with the government that the juror would not look the prosecutor in the eye. The court also agreed with the third challenge, noting that the juror might have “some sort of personal interest” because the case would involve witnesses who had used aliases. Finally, the court agreed with the government’s explanation that the final challenged juror lacked appropriate intellect or sophistication, by reiterating that she served in a functionary capacity at her employment. The court did not clearly err in concluding that the government’s proffered reasons were valid and non-discriminatory.
 

 Yim argues, as she did at trial, that the court’s decision was flawed because it failed to engage in a comparative analysis as used by this court in
 
 Turner. See
 
 121 F.3d at 1251-52 (stating that a “comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination”). Yim, however, misreads
 
 Turner.
 
 There,
 
 this court
 
 conducted the comparative analysis, not the district court. We
 
 *969
 
 began by noting that the prosecution cannot lawfully exercise peremptory challenges “against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged.”
 
 Id.
 
 at 1252 (internal quotation marks and citation omitted). We then analyzed the record and noted that a non-ehallenged, white juror possessed the very characteristics on which the prosecution challenged another African-American juror.
 
 Id.
 
 at 1252-54. We concluded that the court’s finding that the prosecution had offered race neutral reasons for dismissing a juror was clearly erroneous.
 
 Id.
 
 at 1255.
 

 Here, unlike in
 
 Turner,
 
 nothing from the record indicates that a non-ehal-lenged juror possessed any of the characteristics on which the prosecution challenged the female jurors. Yim merely speculates that a comparative analysis might have shown discrimination. Comparative analysis is one of many tools that a court may employ to determine whether the government exercised its peremptory challenges for a discriminatory purpose. Trial courts, however, are not required to conduct such an analysis. Accordingly, we conclude that the district court did not err.
 

 Conclusion
 

 For the reasons above, we conclude that (1) the district court did not err in denying You’s motion to dismiss on double jeopardy grounds, (2) the district court did not err in instructing the jury, (3) we lack jurisdiction to review the district court’s decision not to depart from the guidelines and (4) the district court did not err in accepting the government’s reasons for making its peremptory challenges. We AFFIRM.
 

 [1]
 

 . The court is referring to U.S.S.G. § 5K2.0 (stating that a departure is appropriate where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that ... should result in a sentence different from that described”) and
 
 Koon v. United States,
 
 518 U.S. 81, 106, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (holding that the Sentencing Guidelines generally do not limit the number of potential factors that could warrant a departure).
 

 [2]
 

 . Because You consented to the mistrial, we need not address whether manifest necessity caused the mistrial.
 

 [3]
 

 .
 
 See
 
 The New Oxford American Dictionary 883 & 1384 (2001) (defining "intent” as "intention or purpose” and defining "purpose” as "the reason for which something is done”); Biack's Law Dictionary 813 & 1250 (7th ed.1999) (defining "intent” as "the state of mind accompanying an act” and defining "purpose” as "[a]n objective, goal, or end”).
 

 [4]
 

 . We need not consider whether You actually lacked an ability to understand the wrongfulness of his behavior. The question on appeal is simply whether the district court knew it
 
 *967
 
 could consider such a departure.
 
 See United States v. Mendoza,
 
 121 F.3d 510, 515 (9th Cir.1997) ("[W]e decline to exercise the discretion for the district court, or to define in advance what might constitute an abuse of that discretion.”).
 

 [5]
 

 . 476 U.S. 79, 97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding that the Equal Protection Clause forbids a prosecutor from challenging potential jurors solely on account of their race);
 
 see also J.E.B. v. Alabama ex rel. T.B.,
 
 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (extending
 
 Batson
 
 to hold that the Equal Protection Clause forbids prosecutors from challenging potential jurors solely on account of their gender).