**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEPH CARL STANLEY, | No. 21-55371 |
| Petitioner-Appellant, | D.C. No.<br>2:12-cv-09569-JAK-GJS |
| v. | |
| MARTIN BITER, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted January 9, 2023
Pasadena, California

Before: BERZON, CHRISTEN, and BENNETT, Circuit Judges.
Dissent by Judge BERZON.

California state prisoner Joseph Stanley appeals the district court's denial of

his petition for writ of habeas corpus. Stanley's petition challenged his convictions

on multiple state charges, contending that the State's prosecution of him violated

his constitutional right to be free from double jeopardy. We assume the parties'

familiarity with the facts and do not recite them here. We have jurisdiction

---

&ast; This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

pursuant to 28 U.S.C. §§ 1291, 2253, and we affirm.

Because Stanley is "a person in custody pursuant to the judgment of a State court," his petition would ordinarily be reviewed under 28 U.S.C. § 2254. *See Dominguez v. Kernan*, 906 F.3d 1127, 1134–35 (9th Cir. 2018). But Stanley argues that his petition should be reviewed under 28 U.S.C. § 2241 because he originally filed it as a pre-trial detainee and he lost his right to be free from double jeopardy only as a result of the federal courts' erroneous application of *Younger v. Harris*, 401 U.S. 37 (1971). Because Stanley's claim fails even under § 2241, we need not decide which standard applies.

Under the Double Jeopardy Clause of the Fifth Amendment, "upon declaration of a mistrial, retrial will only be permitted if the defendant consented to the mistrial or if the mistrial was caused by 'manifest necessity.'" *Weston v. Kernan*, 50 F.3d 633, 636 (9th Cir. 1995) (quoting *Arizona v. Washington*, 434 U.S. 497, 505 (1978)). Consent to a mistrial may be express or implied. *United States v. You*, 382 F.3d 958, 964 (9th Cir. 2004). The trial court's declaration of mistrial in Stanley's case was not caused by manifest necessity or express consent. Thus, Stanley's appeal turns on whether his counsel impliedly consented to a mistrial.

We will not find implied consent where the trial court "precipitously" declares a mistrial without providing the defendant an opportunity to object.

*United States v. Gaytan*, 115 F.3d 737, 743 (9th Cir. 1997). As the Supreme Court

has explained, "[t]he important consideration, for purposes of the Double Jeopardy

Clause, is that the defendant retain primary control over the course to be followed

in the event of [judicial or prosecutorial] error." *United States v. Dinitz*, 424 U.S.

600, 609 (1976); *see also Gaytan*, 115 F.3d at 743 (quoting *Dinitz*, 424 U.S. at

609)). By contrast, where the trial court makes clear its intent to declare a mistrial

and provides "ample opportunity to object to the mistrial," but defense counsel

raises no objection, our court has found implied consent. *You*, 382 F.3d at 965; *see*

*also United States v. Smith*, 621 F.2d 350, 352 (9th Cir. 1980) ("Defense counsel

did not object to the order of mistrial, despite adequate opportunity to do so.

Indeed, we find that he impliedly consented to the mistrial.").

Here, defense counsel requested that four alternates be seated because trial

was to begin shortly before the holidays. The jury was sworn in on a Friday

afternoon and, after it was sworn in, one juror informed the court that he would not

be able to serve after all. On Monday morning, another two jurors informed the

court that they would be unable to serve. A fourth juror informed the court that,

because of a communicable disease, he would need a continuance of at least two

days. Stanley's trial counsel engaged in a sidebar conversation with the judge and

prosecutor in which the judge made clear his understanding that the jury was down

to a single alternate who could only participate if the trial were delayed by two

days. The judge stated:

> The bottom line is, when this case goes, if this case goes, you let me know what you want to do. This person, I haven't heard a decision on him yet, and we are down three people at this point. Also what I want to say is, if we are down to no alternates, when I call them in the room before we go any farther, I'm going to say look, I don't know exactly when this will end at this point. You could be here until the last week in November. I don't know. I cannot do that. Let me know right now. If somebody raises their hand, we are done.

Stanley's counsel raised a concern regarding scheduling his expert, and the prosecutor agreed to allow the expert to testify out of order. When the jury returned, the judge explained to them that the jury had lost three members and that the only remaining alternate would require that the trial be continued for two days. He explained to the jury that the trial might extend through the Thanksgiving holiday and asked any jurors unable to commit to serving during that time to raise their hands. The court made clear that if any jurors did so, the trial would not move forward.

Juror Number 2 raised his hand and stated that he could not participate because he had had a heart attack. Back at sidebar, the judge told the attorneys, "I believe they win." Defense counsel did not object. The judge then expressed at length his frustration to the jury, before directing them to leave the courtroom. About fifteen minutes later, proceedings resumed without the jury. The judge declared a mistrial, and Stanley's attorney discussed with the court the scheduling of a new trial.

Stanley argues that the judge initially expressed an intention to allow jurors to opt out only "if we are down to no alternates," but deviated from that plan when he proceeded to allow the jurors to opt out even though one potential alternate remained. Even if Stanley is correct, however, the first extended sidebar conversation put defense counsel on notice that the judge was considering declaring a mistrial. Subsequently, when the judge clearly explained to the jury his intention to declare a mistrial if another juror opted out, counsel did not object. Similarly, after Juror Number 2 claimed to have had a heart attack, the judge stated in another side bar conversation, "I think they win," but again Stanley's lawyer did not object. Finally, the judge explained to the jury his frustration about being unable to go forward, and defense counsel still did not object. Even after the jury had departed, Stanley's attorney did not object to declaration of a mistrial, instead engaging in a discussion about the timing of a new trial. Stanley's attorney states that he was confused by these events, but he never sought clarification.

Stanley's brief argues that his counsel's actions must be viewed through the lens of what he understood to be California's standard, which required more than silence from defense counsel to find implied consent. But in the declarations filed in connection with Stanley's double jeopardy challenge, Stanley's counsel did not claim to be operating under that impression of California law. Further, the California Court of Appeal clarified in *Stanley v. Superior Court*, 206 Cal. App.

4th 265 (2012), that defense counsel's actions in this case did satisfy the state's implied consent standard. *Id.* at 291–92.

The trial court's declaration of mistrial was not precipitous. And given these circumstances—particularly counsel's participation in multiple sidebar conversations regarding the possibility of a mistrial and the multiple opportunities to object—defense counsel's actions were sufficient to manifest implied consent to the mistrial.

**AFFIRMED.**

*Stanley v. Biter*, No. 21-55371

BERZON, Circuit Judge, dissenting:

Whether we review this habeas petition under 28 U.S.C. § 2241 or under 28 U.S.C. § 2254(d)(2), the record here does not, reasonably or otherwise, establish that Joseph Carl Stanley's defense attorney consented to a mistrial. I therefore respectfully dissent.

1. The Double Jeopardy Clause "protect[s] the interest of an accused in retaining a chosen jury." *Crist v. Bretz*, 437 U.S. 28, 35 (1978). Even when a problem with a juror arises that might justify dismissal, the defendant may "desire 'to go to the first jury and, perhaps, end the dispute then and there with an acquittal.'" *United States v. Dinitz*, 424 U.S. 600, 608 (1976) (citation omitted).

The Double Jeopardy Clause is not, however, implicated when the defendant has consented to a mistrial, because consent, like "[a] defendant's motion for a mistrial[,] constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.'" *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982) (quoting *United States v. Scott*, 437 U.S. 82, 93 (1978)); *see also Scott*, 437 U.S. at 99–100. Thus, "the defendant, by deliberately choosing to seek termination of the proceedings against him . . . , suffers no injury cognizable under the Double Jeopardy Clause." *Scott*, 437 U.S. at 98–99. The Clause "does not relieve a defendant from the consequences of [a] voluntary

1

choice." *Currier v. Virginia*, 138 S. Ct. 2144, 2151 (2018) (quoting *Scott*, 437 U.S. at 99). Ultimately, then, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed." *Dinitz*, 424 U.S. at 609.

The majority here does not conclude that Stanley "deliberately cho[]s[e] to seek termination of the proceedings against him." *Scott*, 437 U.S. at 98–99. Instead, its decision to imply consent in the circumstances here emphasizes the failure of defendant's counsel to raise an unsolicited objection to a potential mistrial, effectively applying waiver or forfeiture principles to the Double Jeopardy Clause. But "traditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error." *Dinitz*, 424 U.S. at 609. Absent manifest necessity for a mistrial, Supreme Court case law demands "*consent*" – not waiver or forfeiture – before a defendant may be retried. *See id.* at 606–07 (emphasis added).

2. Consistent with these Supreme Court precepts, we have held that "consent to mistrial may be inferred 'only where the circumstances *positively* indicate a defendant's willingness to acquiesce in the mistrial order.'" *Weston v. Kernan*, 50 F.3d 633, 637 (9th Cir. 1995) (emphasis added) (citation omitted); *see also United States v. You*, 382 F.3d 958, 964–65 (9th Cir. 2004); *United States v. Gaytan*, 115 F.3d 737, 742 (9th Cir. 1997). Where there "[a]re *no* 'affirmative' expressions by

2

counsel consenting to the dismissal, . . . we cannot find implied consent." *Gaytan*, 115 F.3d at 744 (citing *United States v. Smith*, 621 F.2d 350, 352 (9th Cir. 1980)). The majority relies on *Smith* and *You*, two cases in which this court found implied consent to a mistrial, but both cases involved positive – that is, affirmative – indications of consent wholly absent here.

*Smith* involved several affirmative statements by defense counsel indicating counsel's acquiescence in a retrial:

> [B]efore the court dismissed the jury, the court and the attorneys discussed the defense's desire that the mistrial ruling be explained to the jury in a way that did not cast blame on the defendant or his counsel; the defense's desire that the dismissed jurors be instructed not to discuss the case; and the possibility that the schedules of the attorneys and of the out-of-town witnesses could accommodate a retrial of Smith before the 90-day period of the Speedy Trial Act expired.

621 F.2d at 352 (emphasis added). When the court asked "(D)o you mind if we bring the jury in . . . and excuse them?," counsel responded, "That is fine." *Id*. We affirmed the district court's conclusion that the defendant had consented to the mistrial because the defense attorney "not only did not object to the order of mistrial, but *affirmatively indicated his understanding that there could and would be a retrial*." *Id*. (emphasis added). As we later explained, "*Smith* . . . found implied consent as the result of specific and unambiguous conduct on the part of defense counsel that demonstrated consent." *Gaytan*, 115 F.3d at 742.

3

*You* involved a co-defendant's express motion for a mistrial where the co-defendant's counsel stated: "I'll state categorically on the record that I wouldn't interpose any double jeopardy problem." 382 F.3d at 962. When the trial court "stated that it was going to declare a mistrial and schedule a new trial," the court expressly "asked the attorneys if [they] wished 'to make any record?'" *Id.* *You*'s counsel responded that he did not. *Id.* We held that "*You*'s counsel's . . . repeated failure to take advantage of the trial judge's offer to make a record . . . constituted an implied consent to the mistrial." *Id*. at 965.

3. Unlike in *Smith*, defense counsel here did not affirmatively accede to dismissal of the jury before it occurred. And unlike in *You*, Stanley's counsel did not affirmatively decline an opportunity to object. Indeed, the majority has not identified any case in our court or the Supreme Court finding implicit consent in circumstances remotely like those in this case — that is, where there were simply no "positive[] indicat[ions]," *Weston*, 50 F.3d at 637, that the defendant consented to the mistrial.

Here, Stanley's counsel remained silent in a rapidly evolving situation in which both the facts concerning the jurors' ability to serve as well as the trial court's stated intentions were shifting. Before the court's dismissal of the jury, there was no motion for a mistrial, no discussion of a retrial, and no opportunity for

4

defense counsel to confer with Stanley, nor any invitation to object to or comment on the possibility of a mistrial.

In particular, the trial court's statements to counsel outside the presence of the jury did not put defense counsel on notice that the court was contemplating declaring a mistrial if there were twelve jurors qualified to serve. The court indicated that *if* there were no alternates, it would question the jury and if another juror "raises their hand, we are done." But when the trial court dismissed the jury, there were still twelve jurors remaining, as both the prosecution and the defense were willing to continue the trial to accommodate one juror with a temporary medical problem.

The trial court's statements to the jury provided the first suggestion that the court was considering dismissing the jury even if twelve jurors remained. *See* Mem. Disp. at 4. At that point, there was not "ample opportunity," *You*, 382 F.3d at 965, for Stanley to object. The court was speaking in the jury's presence, except for a one-sentence sidebar in which only the court spoke, saying, "I believe they win." The court stated a conclusion at the sidebar; it did not ask whether counsel agreed or objected. After the abbreviated sidebar, the court proceeded to expound on its frustration to the jury; during that lecture, counsel could not reasonably be expected to interrupt. "[T]o have objected in front of the jury might have prejudiced [the defendant] for trying to 'show up' the trial judge, especially if

5

some members of the jury actually wanted to go home despite their civic obligation." *Love v. Morton*, 112 F.3d 131, 138 (3d Cir. 1997) (citation omitted); *cf. Webb v. Texas*, 409 U.S. 95, 97 (1972). At that point, the court immediately and unilaterally ended the matter by dismissing the jury, even though there remained 12 jurors as long as the trial was briefly continued.

Further, where, as here, there was no manifest necessity and no prejudicial error, it would have been important for defense counsel to discuss with Stanley the benefits and risks of proceeding to trial under the circumstances. Defense counsel must have "an adequate opportunity . . . to discuss the various possible choices with their clients." *Gaytan*, 115 F.3d at 743. "[C]onscientious defense counsel are obligated to consult with their clients and with one another before selecting [a] course of action." *Id.* at 744. "[W]e cannot agree that . . . [defense counsel] should have been prepared to determine on the spot their position on an issue of such vital importance to their clients." *Id.*

Stanley's attorney had no opportunity to confer with his client as to whether to consent to a mistrial. From the moment the court told the jury that it could not go forward if someone "tells me you can't do it," until the time the court dismissed the jury, there was no recess. And the only person other than the judge who had a recognized opportunity to speak was the juror who did not "think" he could serve. Neither defense counsel nor the prosecutor got a word in, and there was no time for

6

defense counsel to confer with Stanley. In contrast, in *You*, there was a 24-minute recess after co-defendant's counsel renewed the motion for mistrial and before the court declared a mistrial and dismissed the jury. 382 F.3d at 962.

Defense counsel's statements *after* the jury was dismissed provide no basis for implying consent, particularly given that the parties do not dispute that the court could not have recalled the jury once it was dismissed. "[C]ounsel's statements and silences after the order of mistrial are relevant to the issue of implied consent, *if they come before the actual dismissal of the jury*." *Smith*, 621 F.2d at 352 n.2 (emphasis added); *see also United States v. Bates*, 917 F.2d 388, 393 n.8 (9th Cir. 1990). Once the jury was dismissed, anything Stanley's counsel said "would have made no difference whatsoever." *Gaytan*, 115 F.3d at 743 n.8; *see Bates*, 917 F.2d at 393 n.8.

In short, the court never asked Stanley's counsel if he objected to a mistrial. He had no practical opportunity to do so, especially given his obligation to confer with the defendant first. Any conclusion that Stanley consented under the circumstances here, when he had no opportunity to make a "deliberate election," *Oregon*, 456 U.S. at 676 (citation omitted), is a fiction.

I respectfully dissent.

7